STATE of Tennessee, Appellee/Cross–Appellant,

v.

David BINION, Appellant/Cross–Appellee.

Court of Criminal Appeals of Tennessee

Aug. 2, 1996.

Permission to Appeal Denied by Supreme Court Feb. 10, 1997.

---

Jan R. Patterson (on Appeal), George Morton Googe, District Public Defender (at Trial and of counsel on Appeal), Jackson, for Appellant.

Charles W. Burson, Attorney General and Reporter, William David Bridgers, Assistant Attorney General, Criminal Justice Division, Nashville, Jerry Woodall, District Attorney General, Don Allen, Asst. Dist. Attorney General, Jackson, for Appellee.

## OPINION

PAUL G. SUMMERS, Judge.

The appellant, David Binion, was convicted by a jury on one count each of attempt to commit aggravated rape, aggravated sexual battery, especially aggravated kidnapping, and possession of a deadly weapon with the intent to employ it in the commission of a felony. Approximately two weeks later, by agreement of the parties, the conviction for possession of a deadly weapon was dismissed. Sentenced as a Range II offender, the appellant received concurrent twenty-year sentences in the attempt to commit aggravated rape and aggravated sexual battery convictions. Just over two months later, the trial court dismissed the especially aggravated kidnapping conviction.

1.  It is our policy not to reveal the victim's name.

In this appeal, the appellant raises four issues for review as follows:

1.  Whether the convictions for both attempted aggravated rape and aggravated sexual battery which allegedly arose out of the same course of conduct violate the principles of double jeopardy, merger, and duplicity.
2.  Whether the trial court properly dismissed the aggravated kidnapping as incidental to the sexual offense.
3.  Whether testimony from third parties regarding the victim's statements about the sexual incident was improperly admitted into evidence.
4.  Whether the trial court abused its discretion in ruling that a Florida felony conviction would be admissible for impeachment purposes should the appellant choose to testify.

The state cross appeals challenging the trial court's dismissal of the aggravated kidnapping conviction. Following our review, we affirm the judgment of the trial court.

The testimony at trial indicated that the appellant drove to Katrinia Northern's house where he spoke with the fifteen-year-old victim [1] and Katrinia. The victim knew the appellant since he was dating her cousin. After conversing briefly, the appellant asked the victim if she would like to accompany him to a friend's house. The victim answered affirmatively.

Some distance away, the appellant turned into a road leading to the drag strip. When they reached an abandoned driveway, the appellant backed into it and stopped the car. The appellant turned to the victim and said, "We are fixing to f—k right now." The victim jumped out of the car and ran toward a house located a distance up the road. The appellant caught the victim, put her in a headlock, and pulled her back to the car. Brandishing a pocketknife, the appellant told the victim to stop screaming or he would "stick [her] and throw [her] in the river." The victim said the appellant held the knife close to her throat as he made his demands.

The appellant ordered the crying victim to strip from the waist down and lie in the back

seat of the car. With the victim lying on her back, the appellant pulled his pants and underwear down and climbed on top of her. The appellant rubbed the victim's breast through her shirt while rubbing his penis in an apparent attempt to get an erection. The victim continued to cry and asked the victim to stop. The appellant eventually stopped before achieving penetration and told the victim to redress.

They then drove to Katrinia's house, and the victim stayed there. Katrinia said that the victim was shaking and began to cry. Eventually the victim told her what the appellant had done. At Katrinia's insistence, the victim, still crying and upset, told her mother what had happened. Her mother went to the neighbor's house across the street and called the police. Approximately one hour later, the victim's cousin, Henrietta Jones, telephoned the victim's mother to tell her she had confronted the appellant about the allegations. The appellant admitted to Jones that he did it because he was "about two-thirds into the wind."

## I. MERGER OF CONVICTIONS

In his first issue, the appellant argues that his convictions for attempted aggravated rape and aggravated sexual battery should have been merged. He argues that aggravated rape necessarily includes aggravated sexual battery. We disagree.

■ In *State v. Banes*, 874 S.W.2d 73 (Tenn.Crim.App.1993) this Court stated that "[u]nder some circumstances the offense of aggravated rape and aggravated sexual battery ... would support separate charges and separate convictions." *Id.* at 79–80. "The determination requires an analysis of the allegations of the indictment, the proof, and the elements of the offense." *Id.* at 80. The Court said that the "operative question is whether the evidence supports separate convictions." *Id.* at 81. In *Banes* the appellant was charged with both aggravated rape and aggravated sexual battery. However, the proof established only that the appellant had

had sexual intercourse with the minor victim. Under the facts in *Banes*, the Court concluded that because aggravated sexual battery was a lesser included offense of aggravated rape, the lesser charge should have been merged with the greater charge. We find that *Banes* is distinguishable.

■ In the instant case, the appellant was indicted and eventually convicted on one count each of attempt to commit aggravated rape and aggravated sexual battery. As set forth by the state, the elements of attempted aggravated rape are: (1) that the appellant attempted to unlawfully sexually penetrate the victim; (2) that the appellant used force or coercion in his attempt to accomplish the act; (3) that the appellant was armed with a weapon; and (4) that the appellant's actions constituted a "substantial step" toward achieving said penetration of the victim. Tenn.Code Ann. §§ 39–12–101 & 39–13–502 (1991). The jury heard testimony that when the appellant stopped the car he told the victim, "We are fixing to f___k." When the victim tried to escape, the appellant dragged her back to his vehicle. He then ordered the victim to take off her shorts and panties and lie down in the backseat. The appellant removed his clothing and got on top of the victim. Though attempting to get an erection by fondling his penis, the appellant was unsuccessful in doing so. Thus, it was reasonable for the jury to conclude from this set of facts that the appellant attempted to rape the victim.

The elements of aggravated sexual battery are: (1) that the appellant unlawfully touched the victim's intimate parts or the clothing covering the immediate area of the victim's intimate parts; (2) that the touching can be reasonably construed as being for the purpose of sexual arousal or gratification; (3) that the touching was accomplished through force; and (4) that the appellant was armed with a weapon. Tenn.Code Ann. §§ 39–13–501(2) & (6) and 39–13–504(a) (1991).[2] The proof showed that while the appellant was on top of the victim in the backseat of his auto-

---

2. We note that aggravated sexual battery proscribes "unlawful sexual contact" with the victim. Tenn.Code Ann. § 39–13–504 (1991). Attempted aggravated rape proscribes attempted "unlawful sexual penetration" of a victim. Tenn. Code Ann. §§ 39–12–101 and 39–13–502 (1991). These forms of contact are distinguished in Tenn. Code Ann. § 39–13–501 (1991).

mobile, he rubbed the victim's breast through her clothing. The testimony of the victim indicated that the touching was purposeful and not accidental. Under these facts, it was reasonable for the jury to conclude that the touching was for sexual arousal. The victim testified that the appellant placed the knife nearby in the floorboard while committing the offenses.

While in *Banes* the jury heard proof of one act of sexual penetration and could choose either the greater or lesser offense, in the present case the jury heard testimony of both "touching" and attempted "penetration." As described in footnote two, these offenses require a distinguishable type of contact with a victim as enumerated by the legislature. The appellant could have accomplished the attempted aggravated rape without touching the victim's breast. We find that the proof in this case clearly and separately supports both convictions. Thus, the trial court did not err when it refused to merge them. This issue is without merit.

The appellant also claims that the principles of double jeopardy and duplicity have been violated. Because the aggravated sexual battery and attempted aggravated rape occurred within a relatively close proximity, we will briefly address the appellant's concerns.

■■■ In this context, the double jeopardy clause protects against multiple punishments for the same offense. *State v. Phillips*, 924 S.W.2d 662 (Tenn.1996) citing *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076–77, 23 L.Ed.2d 656 (1969). In *State v. Stephenson*, 878 S.W.2d 530, 538 (Tenn.1994) our Supreme Court held that multiple convictions do not violate the double jeopardy clause if "[t]he statutory elements of the two offenses are different, and neither offense is included in the other." The "same elements" test of *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), requires the court to determine whether each offense contains an element not contained in the other. If such an element is present then punishment for each offense does not offend double jeopardy principles.

■ As set out above, the legislature clearly distinguished two separate types of contact that are required for the respective offenses of aggravated sexual battery and attempted aggravated rape. We find no double jeopardy problem.

■ The appellant's final complaint involves the issue of duplicity. Duplicity involves dividing conduct into two separate offenses out of a single offense. As set out in *Phillips, supra,* a number of general principles determine whether offenses are "stacked" so as to be duplicitous (or multiplicitous):

1. A single offense may not be divided into separate parts; generally, a single wrongful act may not furnish the basis for more than one criminal prosecution;
2. If each offense charged requires proof of a fact not required in proving the other, the offenses are not multiplicitous; and
3. Where time and location separate and distinguish the commission of the offenses, the offenses cannot be said to have arisen out of a single wrongful act.

*Phillips,* 924 S.W.2d at 665 (citations omitted).

As we established above, the offenses of aggravated sexual battery and attempted aggravated rape require proof of facts not used to prove the other. Thus, these offenses are not duplicitous. This issue is without merit.

## II. *ANTHONY* ISSUE

Issue two is more properly classified as the state's issue in its cross appeal. The state argues that the trial court errantly dismissed the especially aggravated kidnapping conviction. The appellant agrees with the trial court's dismissal.

■ The record indicates that the trial judge dismissed the conviction finding that the kidnapping was "essentially incidental" to the attempted aggravated rape pursuant to the holding in *State v. Anthony*, 817 S.W.2d 299 (Tenn.1991). In *Anthony*, the Tennessee Supreme Court held that where the appellant is charged with kidnapping in conjunction

with another felony, the court must determine:

> whether the confinement, movement, or detention is essentially incidental to the accompanying felony and is not, therefore, sufficient to support a separate conviction for kidnapping, or whether it is significant enough, in and of itself, to warrant independent prosecution and is, therefore, sufficient to support such a conviction.

*Anthony*, 817 S.W.2d at 306.

■ Though the facts are somewhat sketchy as to the particulars of the attempted escape of the victim, we are unable to conclude under these facts that the appellant's actions constituted a separate charge for kidnapping. The appellant's intention on the day in question was to rape the victim. The facts cause us to conclude that the kidnapping was essentially incidental to the attempted aggravated rape.

The state's argument is without merit.

### III. ADMISSION OF THIRD PARTY STATEMENTS

The appellant's third complaint is that the trial court erred in allowing third parties to give "fresh complaint" testimony. Specifically, he challenges the testimony of Katrinia Northern, Marilyn Cole (victim's mother), and Henrietta Jones.

■ In *State v. Livingston*, 907 S.W.2d 392, 395 (Tenn.1995), the Tennessee Supreme Court held that fresh complaint testimony is inadmissible in child sexual abuse cases. However, it concluded that "evidence in the nature of fresh-complaint may be admissible as substantive evidence if it satisfies some hearsay exception...." *Id.* (citing excited utterance and statement of existing mental, emotional or physical condition as examples).

#### A. Excited Utterance

The testimonies of Katrinia Northern and Marilyn Cole were essentially identical. Katrinia Northern testified that the victim returned to her house approximately thirty minutes after leaving with the appellant. Northern said the victim was shaking and began to cry when she asked her what was wrong. The victim told Northern that the appellant had attempted to rape her and described the incident. Northern told the victim she should tell her mother what had happened.

Northern and the victim went directly to Marilyn Cole's house and recited the specifics of the incident. Cole also testified that the victim was upset and crying and that she looked scared.

■ A statement is admitted as substantive evidence, as an exception to the hearsay rule, if the statement "relat[es] to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Tenn. R.Evid. 803(2). In *State v. Smith*, 857 S.W.2d 1, 9 (Tenn.1993) our Supreme Court stated that the "ultimate test" for determining the admissibility of such a statement is "spontaneity and logical relation to the main event and where an act or declaration springs out of the transaction while the parties are still laboring under the excitement and strain of the circumstances and at a time so near it as to preclude the idea of deliberation and fabrication."

■ We find that the requisites of Rule 803(2) have been met. The attempted rape described by the victim certainly qualified as a "startling event." Further, the evidence illustrates the victim's continuing excitement and strain that resulted from the incident. Finally, the thirty to forty-five minute time lapse greatly diminished any likelihood of deliberation and fabrication where no proof exists to support either.[3] We conclude that the testimony of both witnesses was properly admitted.[4]

---

3. *See State v. Anthony*, No. 01C01–9504–CC–00115, 1996 WL 63952 (Tenn.Crim.App. Feb.13, 1996) (statement made approximately thirty-five minutes after the incident) and *State v. Winfrey*, No. 02C01–9210–CC–00235, 1994 WL 53642 (Tenn.Crim.App. Feb.23, 1994) (statements made

one to two hours after rape attack were admissible where the victim was still visibly nervous).

4. Although not specifically raised by the appellant, we recognize that the elicitation by Northern of the basis for the victim's condition did not

### B. Admission by Party–Opponent

The appellant's complaint against the testimony of Henrietta Jones is misguided. Jones testified of a telephone conversation she had with the appellant shortly after the incident. During the conversation, Jones told the appellant what was being said about the incident. The appellant responded that he had done it but that he was "two-thirds in the wind." He complains that the testimony was hearsay and pursuant to *Livingston* should not have been admitted. We disagree.

■ An exception to the hearsay rule provides for the admission of "[a] statement offered against a party that is (A) the party's own statement in either an individual or a representative capacity...." Tenn.R.Evid. 803(1.2). Without question this exception covers the appellant's statement made to Ms. Jones. This issue is without merit.

## IV. ADMISSIBILITY OF PRIOR FLORIDA CONVICTION

In his final issue, the appellant contends that the trial court erred when it ruled that a 1993 Florida conviction for delivery of cocaine would be admissible for impeachment purposes should the appellant choose to testify. Specifically, he makes three challenges to the trial judge's decision. First, he asserts that the crime did not involve dishonesty; therefore, it was not probative. Secondly, he argues that the trial court erred when it assumed the Florida conviction was a felony. Finally, the appellant claims that an error in the notice of impeachment should have prevented questioning as to the Florida conviction. We disagree.

### A.

Evidence that the witness has been convicted of a crime may be admitted if:

1. the state gives the accused reasonable written notice of the impeaching conviction before trial;
2. the court, upon request, determines that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues; and

*affect the admissibility of "excited utterance"*

3. the court must rule on the admissibility of such proof prior to the testimony of the accused.

Tenn.R.Evid. 609(a)(3). The rule also requires that the offense be punishable by death or more than one year imprisonment or, if not, be a crime involving dishonesty or false statement. Tenn.R.Evid. 609(a)(2). Further, the conviction is admissible only if a period of ten years has not elapsed between the date of release from confinement and commencement of the action or prosecution. Tenn.R.Evid. 609(b).

■ It is undisputed that the state filed a written notice of its intent to use the appellant's prior convictions for impeachment purposes. Prior to the appellant's proof, the trial court conducted a jury-out hearing to determine the admissibility of the appellant's prior convictions. Following the discussion, the trial judge ruled that the state could use a 1987 conviction for fraudulent breach of trust and a 1993 conviction for delivery and sale of cocaine.

The trial judge did not state on the record the reasons for his holding. However, upon our review, we agree with the judge's conclusion. Both convictions were probative and could have been used to impeach the appellant should he have chosen to testify.

### B.

■ Although the trial judge should have confirmed the classification of the Florida drug offense prior to his ruling, we find that because the Florida conviction was indeed a felony, it would have been admissible against the appellant. *See* §§ 893.03, 893.13(1)(a)(1) & 893.13(1)(e)(1), Fla.Stat. (1991). As such, the appellant's decision is not affected by the actions of the trial court.

### C.

■ In his final subissue, the appellant argues that because the wrong Florida county was listed in the notice of impeachment as to drug conviction, he could not have been questioned about that conviction. We disagree. The record indicates that the notice

*testimony.*

listed the proper type of conviction and that it occurred in Florida. This information served the purpose of putting the appellant on notice of its intended use. Although we do not condone such errors, we find that under the facts of this case, it is of little or no consequence that the wrong county of conviction was listed on the notice. This issue is without merit.

## CONCLUSION

The judgment of the trial court is, in all respects, affirmed.

JONES, P.J., and HAYES, J., concur.