IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 27, 2000

## STATE OF TENNESSEE v. TONY ALLEN LEONARD

**Appeal from the Criminal Court for Sullivan County**
**No. S40,612    R. Jerry Beck, Judge**

_____

**No. E1999-00971-CCA-R3-CD**
**December 1, 2000**
_____

The defendant appeals his conviction for aggravated sexual battery, contending that the evidence is insufficient to support his conviction, the trial court erred in allowing hearsay evidence, and the trial court erred in allowing the state to impeach the defendant on cross-examination with a prior felony conviction. We affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Larry S. Weddington, Bristol, Tennessee, attorney for appellant, Tony Allen Leonard.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Teresa Murray-Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant, Tony Allen Leonard, appeals as of right his conviction by a jury for aggravated sexual battery, a class B felony. The defendant contends that (1) the evidence is insufficient to support his conviction because there is no proof that he intentionally touched the victim's intimate parts for sexual gratification, (2) the trial court erred in allowing into evidence as an excited utterance a statement made by the victim to her mother, and (3) the trial court erred in allowing the state to impeach the defendant on cross-examination with a prior felony conviction for violation of a habitual traffic offender order.

At trial, the victim testified that she was nine years old when she and her brother and two sisters spent the night at the defendant's residence on July 19, 1997. She said that she, her three siblings, and the defendant's two children slept in the same bed. She stated that she woke up when she felt the bottom of the bed sinking. She said that she saw the defendant in the room doing

something near his daughter. She testified that the defendant left the room but returned about three minutes later, knelt on the bed, and touched her "private" twice over her shorts. The victim indicated that by private she meant the part of the body that goes to the bathroom. The victim stated that she tried unsuccessfully to wake her brother. She said that the defendant came back into the room a second time and touched her again in the same place, at which point, she kicked the defendant's nose. She testified that she told several people this same story, including her mother and her mother's boyfriend, Bryan Pope.

On cross-examination, the victim stated that the defendant and his wife were arguing that night and that the police came to the defendant's house. She said that when she heard the police, she went outside, saw Mr. Pope, and told him that the defendant had touched her. She testified that she was crying during this time because she was scared. She stated that Mr. Pope relayed her statement to the police. She testified that she also told her mother what happened when she got home.

Michelle Greene, the victim's mother, testified as follows: She and her boyfriend, Bryan Pope, went to a concert on July 19, 1997. The defendant and his wife, Carla Leonard, who were her neighbors, kept her four children for the night. Between 12:30 and 1:00 a.m. on July 20, Ms. Leonard came to her house and used the phone to call the police regarding a domestic dispute with the defendant, who, according to Ms. Leonard, had been drinking and was out of hand. As Ms. Greene was walking towards the defendant's home, she saw several police officers arrive at the defendant's home. When the police officers were coming out of the house with the defendant, she went inside to get her children. She found three of her children inside the house but did not see the victim until she left the house. The victim was standing with Mr. Pope beside a police car, and she noticed that the victim had been crying and appeared upset and scared. She asked the victim what was wrong, and the victim responded that the defendant had touched her on her "privates."

Officer Danny Farmer of the Bristol Police Department testified that in the early morning of July 20, 1997, he went to the defendant's home in response to a domestic violence call and that another officer arrested the defendant as a result of the domestic disturbance. He said that while he was at the defendant's home, he saw the victim and noticed that she was crying and shaking and that her speech was jerky. He stated that the victim told him that the defendant had touched her and that she pointed between her legs. He said that in response to the victim's statement, he called a juvenile detective to handle the matter. He also stated that he did not notice any facial injuries on the defendant.

Investigator Debbie Richmond-McCauley of the Bristol Police Department testified as follows: She handled cases involving physical and sexual abuse of children and received a call around 1:30 a.m. on July 20, 1997. After the victim's mother assured her that the victim was safe, she scheduled an appointment to meet with the victim the next day. She interviewed the defendant on August 4, 1997, and the defendant told her that he sat in his recliner from the time that his wife left to get cigarettes until the police arrived. The defendant also told her that on the day in question, he drank three quarts of beer between 1:00 and 11:00 p.m., that he jumped on the trampoline with

the children until dusk, and that the victim could have been mad at him because she wanted him to continue jumping on the trampoline.

The defendant testified that on July 19, 1997, he drank three quarts of beer but that he did this at a neighbor's house after 1:00 p.m. He stated that when he came home around midnight, he got into an argument with his wife. He said that sometime later he asked his wife, who had gone to bed, to get him some cigarettes. He testified that his wife left the house and that the police arrived ten minutes later. He stated that he had not seen the children since he went to his neighbor's house and that he never went into the children's bedroom.

On cross-examination, the defendant admitted that he was convicted for violating a habitual traffic offender order on January 15, 1998. The defendant stated that he drank beer in a cup and did not drink in front of the children. The defendant admitted that he was the only adult in the house for the ten minutes from when his wife left the house to get cigarettes until the police arrived.

Ms. Carla Leonard, the defendant's wife, testified that she had previously babysat Ms. Greene's children, which included keeping them overnight on several occasions. She said that on July 19, 1997, the defendant played, including jumping on the trampoline, with their children and Ms. Greene's children until dusk. She stated that the defendant was drinking beer out of cans in front of the children and that he went to a neighbor's house around 11:00 p.m. She said that sometime after 2:00 a.m., she left the house, pretending to get the defendant some cigarettes, and went to Ms. Greene's house to call the police. She testified that she called the police because her husband had been drinking and was loud.

Donald Simcox, a neighbor of the defendant, testified that the victim's reputation for being truthful was bad. He admitted that he was not at the defendant's house on the night in question.

## I.  SUFFICIENCY OF THE EVIDENCE

The defendant argues that the evidence was insufficient to support his conviction because there is no proof that he intentionally touched the victim's intimate parts for sexual gratification. The state argues that the evidence is sufficient to support the conviction.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This means that we do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

In the present case, the defendant was convicted of the aggravated sexual battery of a victim less than thirteen years old. To establish this offense, the state was required to prove that "there was

-3-

unlawful sexual contact with the victim by the defendant" and that the victim was less than thirteen years old. Tenn. Code Ann. § 39-13-504(a)(1). "Sexual contact" is "the intentional touching of the victim's . . . intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's . . . intimate parts, if that intentional touching can be <u>reasonably construed</u> as being for the purpose of sexual arousal or gratification." Tenn. Code Ann. § 39-13-501(6) (emphasis added).

When viewed in the light most favorable to the state, the evidence reveals that sometime after midnight, the defendant asked his wife to get him some cigarettes. After his wife left the house, he went into the bedroom where the nine-year-old victim was sleeping. The defendant left the room but returned minutes later, knelt on the bed, and touched the victim's genital area twice over her shorts. The defendant then left the bedroom but returned a few minutes later and touched her again in the same place. From this evidence, the jury could have found beyond a reasonable doubt that the defendant intentionally touched the clothing covering the immediate area of the victim's intimate parts. Moreover, the jury could have reasonably construed that the touching was for the purpose of sexual arousal or gratification. The defendant went into the bedroom where the victim was sleeping and touched the victim's genital area twice. <u>See</u> <u>State v. Hayes</u>, 899 S.W.2d 175, 179 (Tenn. Crim. App. 1995) (holding that the location of the events – the victim's bedroom – was one factor from which the jury could infer the defendant's purpose of sexual gratification). Also, the fact that the defendant touched the victim's genital area on two separate occasions indicates that the touching in that location was not accidental. <u>See</u> <u>State v. Robert Wilkes</u>, No. 01C01-9708-CC-00382, Hickman County, slip op. at 10 (Tenn. Crim. App. July 15, 1999), <u>app. denied</u> (Tenn. Feb. 7, 2000). Finally, the timing of the battery, which was committed after he asked his wife to get cigarettes and when no other adults were in the house, indicates that the touches were for sexual purposes. <u>See</u> <u>Hayes</u>, 899 S.W.2d at 179 (stating that the fact that the defendant waited until the victim's mother was out of the house was one factor from which the jury could infer the defendant's purpose of sexual gratification). Thus, the evidence is sufficient to support the defendant's conviction.

## II. EXCITED UTTERANCE

The defendant contends that the trial court improperly allowed into evidence a hearsay statement under the excited utterance exception when Ms. Greene, the victim's mother, testified that her daughter told her that the defendant touched her private area. The defendant argues that the victim's statement was not made in relation to a startling event or condition and was not made while under the stress caused by the event. The state argues that the trial court properly allowed the statement into evidence as an excited utterance, which is a ruling we may not reverse absent a showing of an abuse of discretion. <u>See</u> <u>State v. McLeod</u>, 937 S.W.2d 867, 871 (Tenn. 1996).

Three requirements must be met for a hearsay statement to be admissible as an excited utterance: (1) there must be a startling event or condition; (2) the statement must relate to the startling event or condition; and (3) the statement must be made while the declarant is under the stress or excitement from the event or condition. Tenn. R. Evid. 803(2); <u>State v. Gordon</u>, 952 S.W.2d 817, 820 (Tenn. 1997). The "ultimate test" for determining the admissibility of an excited

utterance is "spontaneity and logical relation to the main event and where an act or declaration springs out of the transaction while the parties are still laboring under the excitement and strain of the circumstances and at a time so near it as to preclude the idea of deliberation and fabrication." State v. Smith, 857 S.W.2d 1, 9 (Tenn. 1993).

The defendant does not contest the first requirement but argues that the second and third requirements – that the statement was made in relation to the startling event and was made while the victim was under the stress of excitement from the event – were not met because the victim had already reported the battery to Mr. Pope and had been with him for some time before she made the statement to her mother. We note that the defendant's brief does not suggest how the victim's statement that the defendant touched her does not relate to the startling event, which was the defendant touching the victim. We conclude that this statement does relate to the startling event. Therefore, the only remaining issue is whether the statement was made while the victim was under the stress or excitement from the event. Regarding this requirement, our supreme court has stated that the "time interval is but one consideration in determining whether a statement was made under stress or excitement." Gordon, 952 S.W.2d at 820. Other considerations "'include the nature and seriousness of the event or condition; the appearance, behavior, outlook, and circumstances of the declarant, including such characteristics as age and physical or mental condition; and the contents of the statement itself, which may indicate the presence or absence of stress.'" Id. (quoting Neil P. Cohen et al., Tennessee Law of Evidence § 803(2).2, at 534 (3d ed. 1995)).

The record does not reveal the exact amount of time that elapsed between the startling event and the victim's statement. The victim testified that she lay in bed awake from the time the defendant touched her the second time until the police came. When she heard the police, she went outside and found Mr. Pope, whom she told about the event. Ms. Greene testified that when the police brought the defendant out of the house, she went inside the house to get her children but did not see the victim. When she was leaving the house, she saw the victim with Mr. Pope and noticed that she had been crying and appeared upset and scared. She asked the victim what was wrong, and the victim told her that the defendant had touched her. Because there is no testimony as to how long the victim lay in bed before the police arrived, we do not know exactly how much time elapsed between the battery and the victim's statement to her mother. Whatever the time interval, we do not believe it was so great that the victim could not have been under the stress from the sexual battery. Also, the fact that the victim was with and had already told Mr. Pope about the event a few minutes earlier does not mean that she was relieved of the stress of the event. See Smith, 857 S.W.2d at 9. Rather, the victim's behavior and appearance reflect that the victim made the statement under stress. The victim's mother testified that when she approached the victim, she noticed that the victim had been crying and appeared upset and scared. See State v. Robert Bacon, No. 03C01-9608-CR-00308, Sullivan County, slip op. at 22 (Tenn. Crim. App. Jan. 8, 1998) (holding that statements made three hours after the startling event were admissible as an excited utterance when the victim was crying, shaky, and upset); State v. Binion, 947 S.W.2d 867, 873 (Tenn. Crim. App. 1996) (holding that statements made thirty to forty-five minutes after the startling event were admissible as an excited utterance when the victim was upset and crying and looked scared); State v. Lavelle Winfrey, No. 02C01-9210-CC-00235, Tipton County, slip op. at 5 (Tenn. Crim. App. Feb. 23, 1994), app. denied

(Tenn. June 13, 1994) (holding that statements made one to two hours after the startling event were admissible as an excited utterance when the victim was still upset, nervous, and shaking). Given this testimony, we conclude that the trial court did not abuse its discretion in finding that the statement was made under the stress of the sexual battery.

### III.  IMPEACHMENT BY PRIOR CONVICTION

The defendant contends that the trial court improperly allowed the state to impeach him on cross-examination by asking him about a prior felony conviction for violating a habitual traffic offender order.  He argues that the conviction was not relevant to his credibility.  The state responds that the trial court properly allowed the impeachment under Rule 609, Tenn. R. Evid.

Pursuant to Rule 609, the credibility of the accused may be attacked by presenting evidence of prior convictions if certain procedures and conditions are satisfied, one of which is that the trial court must find that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues.  Tenn. R. Evid. 609(a)(3).  While the conviction's probative value on the issue of the defendant's credibility is not overwhelming, the conviction still reflects the defendant's inability to conform his conduct to the requirements of the law.  See generally State v. Farmer, 841 S.W.2d 837, 841 (Tenn. Crim. App. 1992).  Moreover, because the conviction is for a crime of a different nature than aggravated sexual battery, it is not unduly prejudicial.  See State v. Ratliff, 673 S.W.2d 884, 885 (Tenn. Crim. App. 1984) ("Where the prior offense is substantially different from the crime charged, the prejudicial effect is minimal.").  Therefore, the probative value on credibility outweighs the unfair prejudicial effect on the substantive issues.  Accordingly, the trial court did not abuse its discretion in allowing the state to impeach the defendant by asking him about this conviction.

### IV.  CONCLUSION

Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE