IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 2, 2006

## STATE OF TENNESSEE v. BARRY BROWN

**Direct Appeal from the Criminal Court for Shelby County**
**Nos. 04-02408, 04-01488     Chris Craft, Judge**

------

**No. W2005-01539-CCA-R3-CD  - Filed February 16, 2007**

------

The defendant, Barry Brown, was convicted of three counts of aggravated robbery, Class B felonies. Two of the counts of aggravated robbery were merged, and the trial court imposed a thirty-year sentence on each conviction, to be served consecutively to each other for an effective sixty-year sentence in the Department of Correction as a persistent offender. The defendant appeals claiming that: (1) the evidence was insufficient to support the verdict; (2) the trial court erred in failing to suppress pretrial statements made by the defendant; and (3) the trial court erred by granting the State's motion to consolidate. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which THOMAS T. WOODALL and J.C. MCLIN, JJ., joined.

Robert L. Parris, Memphis, Tennessee, for the appellant, Barry Brown.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Alanda Dwyer, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case relates to the defendant's robbery of multiple victims where he used his car to cause motor vehicle accidents to stop the respective victims and then rob them. Two incidents involving separate victims were consolidated and tried together because they involved what the trial court deemed a common scheme or plan. The defendant was charged with two counts of aggravated robbery stemming from the incident with the female victim and one count of aggravated robbery stemming from the incident with the male victim.

At the trial, Janice Hudson testified that she was driving home from work when her car was bumped from behind by a black car. She stopped her car over and got out to check for damage. The black car stopped just behind her, both occupants got out of the car, and the driver apologized to her. She saw no damage to her car and returned to the driver's seat. She attempted to close her door but was stopped by both the defendant and the driver of the black car. The driver reached across her, turned off her car, and removed her keys. She later learned that the driver's name is Ronald Walker. She said the driver pulled a knife, put it to her neck, and demanded her jewelry. She took off her jewelry and gave it to the defendant. The defendant also took $20-25 from the console of her car. She said that as a result of the robbery, she feared for her life and moved away from Memphis. She identified the photos of the car used by the defendant. She recalled that the driver told her to put her head down and they would put her keys in the grass where she could retrieve them. They pushed her head under the steering wheel and between her knees. She got up after she heard their car leave, and another car stopped to assist her. The passengers in the assisting car contacted the police and called the victim's sister so she could bring her a set of keys. Her sister's husband had to drive her car home because she did not feel able to drive. She gave a statement to the police and identified both the defendant and the driver in a photo lineup. On cross-examination, the victim said she did not see whether the defendant had a weapon and could not recall anything the defendant said.

John Campbell testified that he was driving to Helena, Arkansas, after a baseball game in Memphis when he noticed a car behind him driving erratically. The car hit him in the rear, and he pulled over. He stopped some distance in front of the other car and called 9-1-1. The other car pulled closer, and he pulled further away to keep a safe distance. He identified the defendant as the driver and said the defendant approached his vehicle. Again, he pulled up further, and the defendant returned to the other car, made an U-turn, and headed back toward Interstate 240. The police did not arrive so Campbell followed the car to get its license plate number. He trailed the car to a subdivision on Brooks Road. He lost sight of the car until it returned driving toward him at a high rate of speed and with the lights off. He swerved to avoid the car before it blocked him in a cul-de-sac. He put his car into reverse to escape but was hit by the other car. The impact caused his vehicle to go into Park. The passenger exited the car and pulled Campbell from his vehicle. The defendant approached Campbell, holding a weapon that he believed was either a pistol or brass knuckles. He said they called him "everything but a child of God," asked for his money, ransacked his vehicle, took his cellular telephone, keys and drivers license, and then drove off. As they left, he got their license plate number. An off-duty fireman came by, phoned the police, and stayed with him until the police arrived. He provided the police with the license plate number. He said that he did not turn to look at the weapon because he was "scared to death" and believed it was a deadly weapon. He identified the photos of the car and its license number. He recalled that there was tape on the vehicle and that he was hit with the front and back of the car. He gave the police a statement and identified the defendant's photo in a photo lineup. He said there was no doubt that the defendant was the person who robbed him.

Memphis Police Sergeant Robbin Campbell testified that he was with the South Precinct Task Force on August 26, 2003. He had received an informational bulletin regarding a vehicle implicated in a robbery. He said he saw the defendant's vehicle while riding in an unmarked car and

radioed for uniformed patrol cars to pull the vehicle over. Approximately fifteen cars responded. Two officers removed the defendant and the driver from the vehicle while Sergeant Campbell covered them with a handgun. The officers recovered a handgun from the car and radioed robbery detectives to meet them. A crime scene officer came to take photos. Sergeant Campbell said the photos entered as exhibits were of the same car and same tags. The car was a black, four-door Daewoo with damage on the front and rear and with the license plate in the rear window.

On cross-examination, Sergeant Campbell testified that the left side of the handgun was missing and that the gun could not be fired. He said the gun had no firing pin, cocker, or trigger.

Memphis Police Officer Timmie Wilson testified that he took the defendant's statement on August 20, 2003.[1] He said that he mirandized the defendant and that the defendant signed a waiver of his rights and provided a statement. The defendant advised Officer Wilson that he committed only two of the robberies and that another person was responsible for the remainder of the robberies. The defendant would not put his statement into writing.

On cross-examination, Officer Wilson said the defendant told what took place and said, "I'm good for two of them and somebody else did the rest of them." He said the defendant did not refer to any specific robbery. On redirect, he said the person accompanying the defendant was Ronald Walker.

Memphis Police Officer Rodney Askew testified that he was assigned to the Crime Scene Unit in August 2003. He was called to the scene to take photos regarding the robbery. He testified that he found a pistol and knife in the vehicle and that there was damage to the vehicle. He identified the knife and said it was found behind the driver's seat under a piece of plastic. He identified the gun and said it was found on the floorboard on the front passenger side. He wrote his initials and IBM number on the gun and knife and was able to positively identify them at trial. He said that the photos introduced as evidence showed the damage to the front and rear of the vehicle and to the hood.

On cross-examination, Officer Askew testified that he photographed the car to show damage and that he was complete in photographing the damage.

Sergeant Timmie R. Wilson testified that he was assigned to the robbery bureau of the Memphis Police Department in 2003. He investigated the license tag number obtained from one of the victims. He discovered the vehicle was owned by the defendant's brother, who was in jail at the time. He identified the defendant as a possible suspect, pulled his photo, and put out a broadcast about him. He was located a couple of days later. Sergeant Wilson said he was responsible for putting together the photo line-up and said that it was made up of people who looked similar to the defendant. Both victims identified the defendant and Mr. Walker. Sergeant Wilson later spoke with

---

[1]This date is prior to the date testified to by Sergeant Campbell as the date of the defendant's arrest.

the defendant and advised him of his rights. The defendant signed the advice of rights form and told the sergeant that he committed only two robberies but refused to put his statement into writing.

The State rested its proof. The defense offered no proof and moved for a judgment of acquittal. The motion was denied, and the defendant was voir dired regarding his decision not to testify. The jury found the defendant guilty of three counts of aggravated robbery. The trial court merged the two counts of the first indictment and imposed consecutive thirty-year sentences on each remaining conviction, resulting in a total effective sentence of sixty years in the Department of Correction as a persistent offender.

## Analysis

### I. Sufficiency of the Evidence

The defendant contends that no rational trier of fact could determine that he is guilty beyond a reasonable doubt. In support of his argument, he contends that the State failed to present evidence that the victims sustained serious bodily injury or that the robberies were accomplished by use of a deadly weapon or article fashioned to lead the victim to believe it was a deadly weapon. He asserts that the testimony of the first victim established that he was not holding the knife to her throat. He asserts that the gun used against the second victim was not functioning and, therefore, was incapable of being a deadly weapon.

The State responds that the evidence was sufficient and that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The State argues that the testimony at trial revealed that the defendant was responsible for removing the first victim's jewelry while his accomplice held the knife. The State argues that the second victim was threatened with what he believed to be a pistol and feared for his life during the robbery. The State argues that both victims were able to identify the defendant in a photo line-up and that the defendant gave a statement to the police that he "did two robberies."

Our standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence; rather, we presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Aggravated robbery, as it applies to the facts of this case, is the "intentional or knowing theft of property from the person of another by violence or putting the person in fear" and "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. §§ 39-13-401, -402 (2003).

-4-

In the light most favorable to the State, the record supports the jury's verdicts that the defendant was guilty of aggravated robberies on both occasions. Both victims testified that the defendant used his vehicle to cause a car accident. After causing the accident, he approached the vehicle with an accomplice. During each incident, one assailant brandished a weapon, a knife in the first incident and a pistol in the latter. The evidence showed that the defendant took jewelry and money from the first victim and took a cellular telephone, among other things, from the second victim. The defendant argues that because the gun was incapable of being fired, it cannot be considered a deadly weapon. We disagree with his conclusion. The standard in aggravated robbery is that the weapon used is "fashioned to lead the victim to reasonably believe it to be a deadly weapon." Here, the defendant brandished the weapon at night and pointed it at the victim in a manner to make him believe that it was an operating weapon capable of causing him harm if he resisted.

The defendant argues that there was no testimony regarding his use of a weapon in the robbery involving the knife. However, testimony was elicited at trial that demonstrated that the defendant was responsible for removing the victim's jewelry while his accomplice held the knife to the victim's throat. It was reasonable for the jury to find the defendant guilty of aggravated robbery in the incident involving the knife. The defendant's involvement in that robbery meets the statutory definition of aggravated robbery in that the victim was deprived of her property by the defendant while his accomplice brandished a knife. The defendant offers no authority to support his position that he held less responsibility for this aggravated robbery because he was not the person holding the knife.

We conclude that the evidence was sufficient for a rational juror to find beyond a reasonable doubt that the defendant committed the offense of aggravated robbery of both victims. The judgments of the trial court are affirmed.

## II. Consolidation

The defendant argues that the trial court erred in consolidating the two cases, arguing that the trial court failed to meet the burden that the offenses were a part of a common scheme or plan and that the trial court made insufficient inquiry into the issue of whether evidence of one offense would be admissible in a trial of the other offense if they were to remain severed.

On September 24, 2004, the trial court conducted a hearing on the State's motion to consolidate. The defendant opposed the motion which, under Tennessee Rule of Criminal Procedure 14(b)(1), has the same effect as asking for a severance. See Spicer v. State, 12 S.W.3d 438, 444 (Tenn. 2000). Consolidation is only proper if a severance was not required under Rule 14(b)(1), which states that, if two or more offenses are joined or consolidated for trial pursuant to Rule 8(b), the defendant has the right to a severance of the offenses unless the offenses are part of a common scheme or plan and the evidence of one would be admissible in the trial of the others.

We review decisions concerning permissive joinder and severance of offenses pursuant to Rules of Criminal Procedure 8(b) and 14(b)(1) for an abuse of discretion. State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999). As such, a trial court's decision to consolidate or sever offenses will not be reversed unless the "'court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.'" Id. (quoting State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997)).

Recently, a panel of this court delivered an opinion with a more detailed analysis of the issue of severance as it relates to indicted charges. See State v. Andre Dotson, No. W2005-01594-CCA-R3-CD, 2006 Tenn. Crim. App. LEXIS 923, at **7-11 (Tenn. Crim. App. Nov. 29, 2006).

At the consolidation hearing, the State argued in favor of consolidating only these two offenses.[2] The State asserted that these two incidents were part of a common scheme or plan with facts unique to the defendant. The State argued that, although the consolidation would be prejudicial, the probative value outweighed any prejudice to the defendant. The defendant argued that there was not a specific unifying goal or purpose and that the incidents did not reach the threshold of being a signature crime. He also argued that the prejudice would outweigh the probative value. Based on the argument of the parties, the trial court found that there was a common scheme or plan and that the evidence in each case would be admissible in the other case if they were to be tried separately.

The defendant argues that the trial court erred in consolidating the indictments because the offenses were not part of a common scheme or plan. In Tennessee, there are three categories of a common scheme or plan evidence:
> (1) offenses that reveal a distinctive design or are so similar as to constitute "signature crimes;
> (2) offenses that are part of a larger, continuing plan or conspiracy; and
> (3) offenses that are all part of the same criminal transaction.

Shirley, 6 S.W.3d at 248.

For the offenses to reveal a distinct design, the "modus operandi employed must be so unique and distinctive as to be like a signature." State v. Moore, 6 S.W.3d 235, 240 (Tenn.1999) (quoting State v. Carter, 714 S.W.2d 241, 245 (Tenn. Crim. App. 1986)). Although the offenses do not have to be identical in every respect, a common scheme or plan is not found merely because there was evidence that the defendant committed multiple offenses or because the similarities of the offenses outweigh the differences. Moore, at 240-41. "Rather, the trial court must find that a distinct design or unique method was used in committing the offenses." Moore, at 241. The method of perpetrating the crimes must employ "such unusual particularities" that a reasonable person could believe it unlikely that different people were using this method. Id. at 240.

---

[2] The defendant had been charged with seven aggravated robberies or carjackings at the time, and the State sought to consolidate only the indictments stemming from the incidents with these two victims because of their similarity and use of a common plan, using a dark car with tape on the headlight, to cause an accident and rob the victims.

Here, the trial court stated:

Well, in looking at it, what we have here is, we have one trial where the defendant is identified through a photospread. And the car used is significant. He has tape on head-light and it's a particular color and the color was bumped on the road-way and the victim was pulled over and robbed.

Then, the very next day we have the defendant, in the same car with that victim I.D.'d him in a photospread, getting a license plate of the car, which the Sheriff's department, when they find the car discovered there's tape on the head-light. Showing the defendant's presence in that car in both cases.

The modus operandi is the same in each case and the defendant is with the same co-defendant in each case. So this second crime, happening a day later, would substantially - - it would be very probative to show the reliability of the I.D. in the first offense.

So proof of the second offense, I think, would be allowed in the trial of the first offense. And looking at the findings that I have to make in this, whether or not the probative value of the evidence of the other offense is outweighed by a prejudicial affect, if they are both tried together, . . . , I just find that the evidence is being submitted, not for prejudice, just because it's being submitted for another reason, under 404, it would be submitted to show identity in the first offense.

Under those circumstances I think that these crimes do show similar, distinctive designs and for that reason I am going to allow both of those cases to be tried together to show identify [sic] of the defendant as the person who committed the offense.

The trial court found that a distinct design or unique method was used in committing the offenses consistent with the conclusion in Moore. These crimes contained such unusual particularities that a reasonable person could believe it unlikely that different persons committed them. The car employed by the defendant was registered to his brother who was in jail at the time of the incidents. This evidence supports the identification of the defendant because it was the defendant's brother's car and, because the brother was in jail, the defendant had access to the car for use in these crimes. We conclude that the trial court made sufficient inquiry into the issue of whether evidence of one offense would be admissible in a trial of the other offense if they were to remain severed, and we affirm the trial court's consolidation of the offenses.

### III. Admissibility of Statements

The defendant argues that the trial court erred in failing to suppress his pretrial statements, which he alleges were made in violation of his constitutional rights. In support of his argument, he contends that his statements were inadmissible hearsay and were irrelevant. The State responds that

the defendant's statement that he "only did two robberies" was relevant and was admissible at trial as an admission and exception to the hearsay rule.

Here, the trial court held a jury-out hearing regarding the defendant's statement. Officer Wilson testified that the defendant said he committed only two of the robberies and that someone else was responsible for the remainder of them, but he did not specify to the officer which two robberies he committed. The trial court found that the fact the defendant said he was responsible for two robberies was probative and decided to allow the State to enter the portion of his statement regarding his responsibility but excluded the portion of the statement where he acknowledged that he knew about other robberies.

Hearsay is an out-of-court statement offered in court "to prove the truth of the matter asserted." However, Tennessee Rule of Evidence 803(1.2) provides:

Hearsay Exceptions. - The following are not excluded by the hearsay rule:

. . . .

(1.2)    Admission by Party - Opponent. - A statement offered against a party that is
(A) the party's own statement in either an individual or a representative capacity . . .

The defendant's statements, both written and oral, are admissible, subject, of course, to Tennessee Rules of Evidence 401 and 403, see State v. Binion, 947 S.W.2d 867, 874 (Tenn. Crim. App. 1996). The defendant's statement is admissible because it is relevant and falls under an exception to the hearsay rule. The trial court did not err in allowing the testimony.

Conclusion

Based on the foregoing and the record as a whole, we affirm the ruling of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE

-8-