STATE of Tennessee, Appellee,

v.

Steven CHERRY, Appellant.

Court of Criminal Appeals of Tennessee, at Jackson.

July 8, 1982.

Permission to Appeal Denied by Supreme Court Oct. 4, 1982.

David F. Hessing, Paris, Tom Ventimiglia, Paris, for appellant.

William M. Leech, Jr., Atty. Gen. & Reporter Gordon W. Smith, Asst. Atty. Gen., Nashville, Clayburn Peeples, Ted Neumann, Asst. Dist. Attys. Gen., Trenton, for appellee.

## OPINION

DWYER, Judge.

This is an appeal from a conviction of rape, T.C.A. § 39–3705, with punishment at not less than nor more than five years, and a conviction of kidnapping, T.C.A. § 39–2601, with punishment at not less than nor more than two years. The trial court ordered that the sentences be served consecutively.

There are three issues which challenge the sufficiency of the evidence as it related to the question of legal insanity at the time of the crime. The other issues relate to the questioning of prospective jurors during voir dire, the comments of the trial judge during voir dire, the venue, the pre-trial motion to suppress the identification, the conditions of deliberation imposed on the jury by the trial court, the denial of a pre-trial motion to exclude testimony of another victim, and the consecutive sentences.

On August 22, 1980, the victim, a resident of Henry County, had completed her 3:30 p.m. to midnight shift at the plant where she was employed. En route to her home she stopped to get a soft drink and then continued on her journey. When she stopped at an intersection a four-wheel drive vehicle came up directly behind her and put on its bright lights. As she continued on the vehicle pulled alongside her moving car several times and then dropped back; it became obvious to her that the two occupants of the vehicle were not trying to pass. When she attempted to turn into her driveway the pursuers blocked her way and eventually forced her car into a ditch. When she got out and fled towards her home two male whites chased her, with one saying, "Don't let her get away, Steve," She was grabbed by the throat, struck in her stomach, and forcibly placed in the four-wheel drive vehicle.

While they were taking her to a deserted area she heard one say, "Oh, God", whereupon they turned off suddenly onto another road. She believed she saw blue lights at the time.

In a short while the vehicle stopped and the passenger got out to get his car. The journey resumed, with the second car following, and ended near a deserted house. The driver commanded her to disrobe and the two men took turns raping her in the four-wheel drive vehicle with one waiting outside while the other committed the offense. After the two men had a discussion, part of which concerned what time one was expected home by his wife, the passenger-rapist left. As the driver-rapist got into the vehicle and lit a cigarette, the victim "got a real good look at him." The driver then told her he was sorry for what he had done, that if he had known she had a baby he would not have raped her. He told her that there was no reason for anyone to know what had happened, that she should say she was "run off the road by a big black nigger." The driver then gave her directions back to her house, told her to stand still as he left, and drove away without turning on his lights. The victim testified that throughout her ordeal the driver did not talk or act oddly.

At the trial the victim identified the appellant as the driver-rapist. The evidence also reflected that she had identified appellant from police mug books some weeks after the rape, at a police lineup several days after viewing the photographs, and at the preliminary hearing.

An examination of the victim was performed at the Henry County Memorial Hospital soon after the rape, and a rape kit was used to collect evidence. Tests conducted at the Tennessee Bureau of Investigation Crime Lab revealed spermatozoa in the vaginal secretions of the victim.

The appellant did not testify but offered his mother, father, sister, and three other lay witnesses who all testified that due to their observations of appellant during the month of August, 1980, they were of the opinion he was not of sound mind. The three clinical psychologists and one psychiatrist also called were of the opinion that appellant was suffering from a mental illness. They believed that he could neither appreciate the wrongfulness of his act nor conform his conduct to the requisites of law.

The present test for legal insanity in Tennessee was inaugurated in *Graham v. State,* 547 S.W.2d 531, 543 (Tenn.1977):

A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.

A major purpose behind adoption of the new rule was, stated several ways, to allow the "behavioral sciences 'full freedom to put their professional findings and conclusions before the court and jury' "[1]; to bridge "the gulf between psychiatry and the law"[2]; to invite "broader medical-legal investigation"[3]; and to demand "an unrestricted inquiry into the whole personality of a defendant."[4]

Regardless of how the American Law Institute Model Penal Code rule, as adopted by Tennessee, opened the courtroom to the present theories of abnormal human behavior, the resultant testimony of medical experts was to be fit within the framework of evidence being presented to a trier of fact, the jury. As our Supreme Court reiterated in *State v. Stacy,* 601 S.W.2d 696, 697 (Tenn.1980):

In the opinion of the majority, that issue [the inability of petitioner to control his conduct], like the issue of cognitive capac-

---

1. *Graham v. State,* 547 S.W.2d 531, 541 (Tenn. 1977) (quoting *Wion v. United States,* 325 F.2d 420 (10th Cir. 1963)).

2. *Id.*

3. *Id.* at 542 (quoting *United States v. Frazier,* 458 F.2d 911, 915 (8th Cir. 1972)).

4. *Id.,* (quoting *United States v. Chandler,* 393 F.2d 920 (4th Cir. 1968)).

ity, was a question of fact to be determined by the jury.

■ Of particular relevance to the jury's determination is the wisdom contained in *Mullendore v. State,* 183 Tenn. 53, 60, 191 S.W.2d 149, 152 (1945), that the words and acts of the appellant before, at, and immediately after the act are the best evidence of whether appellant was of rational mind at the time of the act.

In *Edwards v. State,* 540 S.W.2d 641, 646 (Tenn.1976), when discussing the state's burden to overcome the evidence of insanity, the Tennessee Supreme Court noted:

> This burden can be met by the state...through the showing of acts or statements of the petitioner, *at or very near* the time of the commission of the crime, which are consistent with sanity and inconsistent with insanity. (Emphasis added.)

■ In weighing such evidence the jury is not required to accept the opinion of experts in preference to other testimony. *State v. Patton,* 593 S.W.2d 913, 916 (Tenn. 1980). If such were the case it would replace our system of trial by jury with one of trial by psychiatrists' opinions.

■ On one side of the scale in the present case the jury had before it the appellant's proof from friends and relatives who stated that in their opinion he was generally not of sound mind and from the psychologists and psychiatrist who examined appellant and were of the opinion that during the commission of the crime he met the criteria for insanity as defined in *Graham, supra.* However, while one of the expert witnesses had seen appellant almost a year earlier when he was taken into custody and the other three had evaluated him in the months after August, 1980, none had seen him at or near the scene of the crime.

On the other side of the scale the jury had before it the testimony of the victim concerning her assailant's actions at the time of the crimes: the appellant saw blue lights and turned to avoid their source, knew specifically where he was going to commit the rape, drove around in hope of confusing the victim as to their exact destination, carried on rational and ordinary conversations with his accomplice, apologized to the victim after the rape, and drove away from the scene without turning on his automobile lights.

Based on the facts enumerated—especially the victim's eyewitness account of the appellant's actions, we find that the jury could have inferred beyond a reasonable doubt that at the time of the crimes the appellant both appreciated the wrongfulness of his act and that he had the mental ability to conform his conduct to the requirements of law but chose not to do so. In order to set the jury verdict aside due to the insufficiency of the evidence, we would have had to state that the victim's testimony was overborne by the testimony of the doctors who examined the appellant some time before and after the acts. In effect, we would be reweighing the testimony, one thing which we are not permitted to do. *State v. Grace,* 493 S.W.2d 474, 476 (Tenn. 1973).

Instead we adhere to the observation in *Burkes v. United States,* 437 U.S. 1, 17, n. 11, 98 S.Ct. 2141, 2150, n. 11, 57 L.Ed.2d 1 (1978), (quoting *King v. United States,* 125 U.S.App.D.C. 318, 324, 372 F.2d 383, 389 (1967)), where the court related that when "sanity" is the issue, the reviewing court should be "most wary" of disturbing the jury verdict:

> But in view of the complicated nature of the decision to be made—intertwining moral, legal, and medical judgments—it will require an unusually strong showing to induce us to reverse a conviction because the judge left the critical issue of criminal responsibility with the jury.

In short, the lay testimony of the victim as to the actions of the appellant could have supported the verdict of the jury on the issue. Despite the overall trend in the appellant's mental health there is sufficient evidence in this record upon which a rational trier of fact could and did find the guilt of appellant beyond a reasonable doubt. T.R.A.P. 13(e). No more is required and no less demanded. The issues as to the evidence are accordingly overruled.

With the only argument advanced being that the disallowance of individual voir dire might taint the venire, we find that there is no merit in this issue.

■ While the better practice during voir dire would have been for the trial court not to have said that there are some laws with which the court does not agree, the court's instructions to the jury that they were not to consider his remarks as law neutralized any prejudicial effect. There is no merit in this issue.

■ The appellant offered proof on his pre-trial motion for change of venue by calling as witnesses several media representatives from Henry County. The witnesses identified articles published in a daily newspaper and press releases broadcast by the radio stations. Of the four witnesses called, three testified that in their opinion a fair jury could be chosen despite the publicity. An examination of the voir dire fully reflects that a fair jury was chosen without any undue trouble. The motion for change of venue issue is without merit.

■ The victim testified that the sheriff's office presented two books containing between 50 and 75 pictures of individuals for her examination. She further related that no one prompted her to make an identification of anyone. She related that she picked appellant out from the array as the party who raped her. She identified him as her assailant at the preliminary hearing and at trial. While it is true the mug shot depicted appellant with a bruise on his cheek or black eye, this of itself did not make the identification unduly suggestive or unreliable. In short, there was no evidence of prompting or coaching during her identification of appellant in the photo array. The evidence supports the trial court's denial of his motion to suppress. This issue is without merit.

The trial lasted two full days: the first day for the State's proof, the second for the defense. The jury received the case at 5:45 p.m. and returned its verdict at 10:47 p.m.

The deliberation was not unduly lengthy. There is no merit in this issue.

■ The appellant urges that at the pre-trial motion the court erred in not ruling whether the State would be allowed to present the testimony of another rape victim in order to rebut the alibi defense of the appellant. It is the appellant's contention that such deferral forced him to forego the alibi defense for one of insanity. At the outset, we note that there was no objection interposed at the time the trial court stated that it would not rule until the evidence was offered. Without such an objection there is no error here. In the second instance, the trial court was correct in not ruling until the evidence was offered. In the last instance, what defense the appellant wished to advance was a matter for his judgment. In short, there is no error here. This issue is overruled.

■ Lastly, while it is true that there are no reasons in the record as to the basis for the trial court's imposition of consecutive sentences, that does not foreclose the matter. The appellant has committed crimes from which it is obvious that he had little or no regard for human life. He rammed the victim's car, knocking it into a ditch. He grabbed the victim by the throat and choked, threatened, raped, and released her on a rural road alone and in darkness. Such actions make him a dangerous offender as defined in *Gray v. State,* 538 S.W.2d 391, 393 (Tenn.1976). The record supports the ordering of consecutive sentences. The issue is without merit.

All issues meritless and overruled, the judgment of the trial court is affirmed.

DUNCAN and BYERS, JJ., concur.