**STATE of Tennessee, Appellee,**

v.

**Doyle D. CARTER, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Oct. 29, 1991.

Permission to Appeal Denied by Supreme Court March 16, 1992.

Monte D. Watkins, Nashville, for appellant.

Charles W. Burson, Atty. Gen. and Reporter, Kimbra R. Spann, Sp. Asst. Atty. Gen., Victor S. Johnson, III, Dist. Atty. Gen., Cheryl Blackburn and Jon Seaborg, Asst. Dist. Attys. Gen., Nashville, for appellee.

## OPINION

PEAY, Judge.

The defendant was convicted of second degree murder for which he received a fifty-two and one-half year sentence. In this appeal as of right, he contends that the State failed to prove beyond a reasonable doubt his sanity at the time of the offense. After a review of the entire record in this cause, we find this issue to be without merit and, therefore, affirm the decision of the trial court.

When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at the trial is sufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt. T.R.A.P. 13(e). In determining the sufficiency of the evidence, we do not reweigh or re-evaluate the evidence, and we are required to afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978).

Questions concerning the credibility of witnesses, the weight and value to be given to the evidence, as well as factual issues raised by the evidence are resolved by the trier of fact, not this Court. *Cabbage*, 571 S.W.2d 832, 835. A guilty verdict rendered by the jury and approved by the trial judge accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State. A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Grace*, 493 S.W.2d 474, 476 (Tenn.1973).

When the evidence fairly raises an issue of sanity at the time of the commission of the offense, the burden is on the State to prove that the defendant had the capacity to commit the crime. The State must prove that the defendant was not suffering from a mental disease or defect

at the time of the commission of the offense, or that if he was, his illness did not prevent him from knowing the wrongfulness of his conduct and from conforming his conduct to the requirements of the law. *Graham v. State*, 547 S.W.2d 531, 544 (Tenn.1977).

The State can meet this burden by offering expert testimony, lay testimony, or by showing acts performed or statements made by the defendant at, or very near the time of the crime, which acts or statements are consistent with sanity and inconsistent with insanity. *Edwards v. State*, 540 S.W.2d 641, 646 (Tenn.1976), *cert. denied*, 429 U.S. 1061, 97 S.Ct. 784, 50 L.Ed.2d 777 (1977). Testimony concerning a defendant's actions, statements, and conduct before, at, and immediately following the criminal act are in fact the best evidence of whether the appellant was of rational mind at the time of the act. *Mullendore v. State*, 183 Tenn. 53, 60, 191 S.W.2d 149, 152 (1945). If expert testimony is offered, the value and weight of such testimony is for the jury to determine, as it must do with other witnesses. *State v. Voltz*, 626 S.W.2d 291, 294 (Tenn.Crim.App. 1981).

Where sanity is at issue, a reviewing court should be very reluctant to disturb the jury verdict. An unusually strong showing is required to support a reversal of conviction because the judge found there was sufficient evidence to allow the jury to determine the critical issue of criminal responsibility. *State v. Cherry*, 639 S.W.2d 683, 686 (Tenn.Crim.App.1982).

From a review of the evidence in this case, it is clear that there is sufficient evidence to support the jury's finding of sanity. This is true even though there was a conflict between the testimony offered by the two expert witnesses.

In asserting his defense, the defendant offered a clinical psychologist who had examined him at some time in 1984, in December of 1989, and again in February of 1990. This expert administered certain tests and talked with the defendant's mother. While he did not have the benefit of all test results and findings of the Veterans Administration Hospital or Middle Tennessee Mental Health Institute, he did have access to the discharge summaries from these two institutions.

From these sources he concluded that at the time of the offense, the defendant suffered from post-traumatic stress disorder along with alcohol and cocaine dependency, the latter resulting in organic delusional syndrome. He then testified that both of these disorders were considered "mental illnesses".

In answer to a hypothetical question, this witness further stated his belief that these mental illnesses would prevent a person from knowing the wrongfulness of his act and render one substantially incapable of conforming his conduct to the requirements of the law. However, while testifying that the defendant told him that he was unable to remember anything from December 25th of 1988 until January 2nd of 1989, this psychologist admitted that the defendant tended to exaggerate his symptoms. Additionally, this expert witness did not discuss this matter with any of the persons who had been in contact with the defendant during that time period nor did he read statements given by the defendant to the investigating officers during that period of time.

The State then offered a licensed clinical psychologist who had met with the defendant on several occasions while the defendant was hospitalized at Middle Tennessee Mental Health Institute. This witness had the benefit of records from the Veterans Administration Hospital which had previously treated the defendant, copies of the defendant's statements made in late December of 1988, and having talked with the defendant's mother, father, two brothers, an uncle, and the investigating officer. Each of these individuals had associated with the defendant during the last week of December, 1988. In addition, although this psychologist had spoken with the defendant on numerous occasions, he testified that the defendant had never indicated to him that he had lost his memory, only that he had not been with the victim.

Based on such information, the State's expert concluded that while the defendant was exaggerating his symptoms, he did suffer from schizotipal personality and psychoactive substance abuse. However, he further testified that these problems would not cause a break with reality. This expert also stated that the defendant exhibited behavior inconsistent with that of someone suffering from post-traumatic stress disorder. In his opinion the defendant was competent to stand trial and had been capable of understanding the wrongfulness of his conduct at the time of the offense. As there was nothing to indicate that the defendant had been unable to conform his conduct to the requirements of the law, this witness believed there was no basis to support an insanity defense.

In addition to the expert testimony offered by the defendant and the State, the investigating officer testified that when he questioned the defendant on December 31, 1988, and again on February 2, 1989, the defendant seemed normal, was cooperative and understanding, and did not have any problems remembering or communicating with the officer. While the defendant's father expressed his belief that the defendant was "crazy", both he and the defendant's two brothers both testified that they had spent time with the defendant on December 25th and/or 26th and that the defendant had seemed normal.

From a review of the above evidence, we find that there is more than sufficient evidence for the jury to have found beyond a reasonable doubt that the defendant was sane at the time of the alleged offense. The defendant has not, therefore, carried his burden of proof; thus, the conviction should be and is affirmed.

WADE and SUMMERS, JJ., concur.