IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
November 7, 2001 Session

## STATE OF TENNESSEE v. JOSEPH MATTHEW MAKA

**Direct Appeal from the Circuit Court for Madison County**
**No. 99-901    Roger A. Page, Judge**

---

**No. W2001-00414-CCA-R3-CD - Filed December 28, 2001**

---

Indicted for the offense of premeditated first degree murder, defendant was convicted of the lesser-included offense of second degree murder and sentenced to twenty-three years. In this appeal as of right, defendant presents the following issues: (1) whether the evidence was sufficient to support the verdict; (2) whether the trial court erred in failing to grant a mistrial when the state referred to defendant's being in jail pending trial; (3) whether the trial court erred in admitting defendant's prior misdemeanor convictions for impeachment purposes; (4) whether the trial court erred in failing to grant a mistrial when the prosecutor misstated the evidence in final argument; (5) whether the trial court erred in failing to grant a mistrial when extraneous prejudicial information was present during jury deliberations; and (6) whether the sentence was excessive. We find no error and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and THOMAS T. WOODALL, J., joined.

George Morton Googe, District Public Defender (at trial and on appeal); and Nina Wong Seiler, Assistant District Public Defender (on appeal), for the appellant, Joseph Matthew Maka.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and James W. Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant and Bertha Crawford previously had a child together. In July 1999 defendant and the child resided in Michigan, and Crawford resided in Jackson, Tennessee. Crawford was romantically involved with the victim, Calvin Waller.

The defendant brought his son from Michigan to visit with Crawford in Jackson in July 1999. It is undisputed that the defendant killed the victim on July 21, 1999, by hitting him in the head numerous times with a two-by-four board. The crucial issues at trial were whether the defendant acted in self-defense and, if not, the degree of homicide committed. The jury rejected self-defense, found the defendant not guilty of premeditated first degree murder, but found the defendant guilty of second degree murder.

Jackson Police Officer Chad French testified that on July 21, 1999, he responded to a missing person report on the victim at the Payless Motel in Jackson. Bertha Crawford resided there with the victim and had filed the report. While on the premises, Officer French spoke with the defendant who also occupied a room at the motel. The defendant denied knowledge of the victim's whereabouts. Subsequently, the defendant gave Officer French permission to search his room. Officer French observed a bed pushed against a closet door, moved the bed, and discovered the battered body of the victim. Duct tape was wrapped around the victim's arms and hands. The apparent weapon, a three-foot-long two-by-four board, was found between the sink and stove.

Jackie Kay Ballard testified that the defendant came to her residence on the morning of the homicide requesting something to protect himself because the victim had threatened to kill him with a gun. Ballard and the defendant unsuccessfully searched for a baseball bat, and the defendant left with a two-by-four board.

Rachel Morris, the victim's aunt, testified that she spoke with the victim by telephone on the morning of the homicide. She stated that during the conversation the victim started "hollering, 'Hold on, Rachel, a minute. Hold on, hold on,' just like he was scared to death." She further stated he never came back to the phone.

After defendant's arrest, defendant gave a statement to Investigator Gerald Golden. In that statement the defendant said he came from Michigan to Jackson to allow his son to visit with the son's mother, Bertha Crawford. When he arrived at the Payless Motel where the victim was staying, he encountered the victim who was Crawford's boyfriend. In the statement the defendant said the victim became angry because he believed Crawford intended to go back to Michigan with the defendant and their son. The defendant told Investigator Golden that the victim threatened to kill the defendant and his son. The defendant claimed in his statement that on the morning of the homicide the victim came into the defendant's room; a struggle ensued; the defendant hit the victim four or five times with the two-by-four; the defendant then duct-taped the victim's hands because the victim was moving; and the defendant put the victim in the closet.

Dr. Cynthia Gardner, a forensic pathologist, testified that she performed the autopsy on the victim. The victim was 55 years of age, six feet tall, and weighed 164 pounds. The victim received a minimum of six blows to the head which caused numerous skull fractures, and this blunt trauma to the head caused death. Dr. Gardner found no defensive wounds on the victim. She further opined that the finding of blood on the outside of the duct tape and the absence of blood beneath the duct

tape indicated that a majority of the blows occurred after the victim's wrists were bound with the duct tape.

Roger Morrison, a forensic scientist, testified for the defense as an expert in blood pattern analysis. Morrison opined that there were several possible explanations as to how blood got on the outside of the duct tape. He opined that it was possible that the victim was bound after the blows were struck; however, he acknowledged it was also possible that the victim received the blows after he was bound.

The defendant testified in his defense. The defendant testified he secured the two-by-four for protection after the victim threatened his and his son's lives. He stated that on the morning of the homicide, the victim charged into the defendant's room and assaulted him. The victim did not have a weapon. Defendant stated he hit the victim with the two-by-four board fearing the victim was going to kill him and his son. The defendant testified he hit the victim several times with the board and duct-taped his hands, fearing "if he got back up that he would hurt my son and me." Defendant denied hitting the victim after his hands were taped. On cross-examination, the defendant stated at the time of the incident he weighed between 280 and 300 pounds, was six feet and two inches tall, and was 37 years of age.

Dr. Dennis Wilson, a clinical psychologist, also testified for the defense. Based upon his evaluation of the defendant, Dr. Wilson opined the defendant suffered from a major depressive disorder, generalized anxiety disorders, and a borderline personality disorder. The defendant's intellectual functioning was borderline retarded. Dr. Wilson opined that the defendant was in "legitimate fear" of the victim and did not act with premeditation.

Defendant's 12-year-old son testified for the defense. The child testified that the victim threatened to kill him on more than one occasion, and he told the defendant about the threats.

Based upon this evidence, the jury acquitted the defendant of premeditated first degree murder; however, the jury convicted the defendant of the lesser-included offense of second degree murder.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant contends the evidence is insufficient to support the jury's verdict of guilt since the evidence shows the defendant acted in self-defense. We respectfully disagree.

## A. Standard of Review

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee,

-3-

885 S.W.2d 797, 803 (Tenn. 1994). On appeal, the state is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. *Id.* This court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the defendant demonstrates that the facts contained in the record and the inferences which may be drawn therefrom are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). Accordingly, it is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994).

## B. Analysis

Second degree murder is the "knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1). A "knowing" killing is one in which "the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-106(20); *see also* State v. Ducker, 27 S.W.3d 889, 896 (Tenn. 2000).

Viewing the evidence in a light most favorable to the state, as we must, the evidence is sufficient to support the verdict. The defendant, previous to the altercation, secured the two-by-four board for possible use against the victim. The victim's aunt stated she was having a telephone conversation with the victim when he said, "Hold on," got off the phone, and never returned to the phone. The 300-pound, six-foot-two-inch, 37-year-old defendant battered the 164-pound, six-foot, 55-year-old, unarmed victim in the head with this crude weapon a minimum of six times with sufficient force to cause numerous skull fractures. *See* T.P.I. - CRIM. 40.06 (5th ed. 2000) (pattern jury instruction noting the "relative strengths and sizes" of the parties are relevant in determining the issue of self-defense); *see also* Bass v. State, 191 Tenn. 259, 231 S.W.2d 707, 713 (1950). The forensic pathologist opined that the majority of the blows occurred after the victim's hands were taped. Although the defendant's forensic scientist opined this was not necessarily true, the weight and value to be given expert testimony is for the jury. *See* State v. Carter, 831 S.W.2d 300, 302 (Tenn. Crim. App. 1991). Furthermore, it is the jury's prerogative to reject self-defense. *See* State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997). Accordingly, a rational trier of fact could conclude beyond a reasonable doubt that the defendant did not act in self-defense and further conclude he knowingly killed the victim.

## II. REFERENCE TO DEFENDANT'S BEING IN CUSTODY

At the time of the homicide, the evidence showed the defendant weighed almost 300 pounds. At the time of trial, the defendant had apparently lost considerable weight. The prosecuting attorney asked the defendant, "You've lost a lot of weight in jail, haven't you?" Defendant requested a mistrial; the prosecutor apologized for the "slip" in making reference to the defendant being in jail;

the trial court gave a curative instruction to the jury; and the trial court denied the motion for mistrial. Defendant contends the trial court erred in failing to grant a mistrial.

The determination of whether to grant a mistrial rests within the sound discretion of the trial court. State v. Smith, 871 S.W.2d 667, 672 (Tenn. 1994). The reviewing court should not overturn that decision absent an abuse of discretion. State v. Brown, 53 S.W.3d 264, 284 (Tenn. Crim. App. 2000). The burden of establishing the necessity for mistrial lies with the party seeking it. State v. Williams, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). No abstract formula should be mechanically applied in making this determination, and all circumstances should be taken into consideration. State v. Mounce, 859 S.W.2d 319, 322 (Tenn. 1993).

Defendant contends this prosecutorial reference to his being in jail deprived him of the indicia of innocence. *See* Estelle v. Williams, 425 U.S. 501, 517, 96 S. Ct. 1691, 1699, 48 L. Ed. 2d 126 (1976) (holding that identifiable prison garb bears an unmistakable mark of guilt). This brief reference to the defendant being in custody pending trial hardly compares to a defendant's appearing in shackles before the jury. A panel of this court has found no error in the trial court's advising the jury that the defendant was incarcerated and had an appointed attorney. State v. Carlos Demetrius Harris, No. E2000-00718-CCA-R3-CD, 2001 WL 9927, at *5 (Tenn. Crim. App. filed January 4, 2001, at Knoxville). Regardless, we conclude the trial court's prompt curative instruction to disregard the reference rendered the brief reference harmless. *See* State v. Nesbit, 978 S.W.2d 872, 885 (Tenn. 1998) (noting jury is presumed to have followed instructions given by trial court). The trial court was well within its discretion in denying the motion for mistrial.

### III.  IMPEACHMENT BY PRIOR CONVICTIONS

Defendant contends the trial court erred in admitting for impeachment purposes his 1992 Michigan misdemeanor convictions for receiving and concealing stolen property and altering and passing postal money orders. We disagree.

The state may use a prior adult conviction to impeach the testimony of an accused in a criminal prosecution if: (a) the conviction was for a crime that is punishable by death or imprisonment in excess of one year or a misdemeanor involving dishonesty or false statement; (b) less than ten years has elapsed between the date the accused was released from confinement and the commencement of the prosecution; (c) the state gives reasonable written notice of the particular conviction or convictions it intends to use to impeach the accused prior to trial; and (d) the trial court finds that the probative value of the felony or misdemeanor on the issue of credibility outweighs its unfair prejudicial effect on the substantive issues. Tenn. R. Evid. 609; *see* State v. Mixon, 983 S.W.2d 661, 674 (Tenn. 1999).

The trial court properly concluded both of these misdemeanor convictions involved dishonesty. The convictions were within ten years, and the state had given proper notice. The trial court further found no similarity between the prior convictions and the crime on trial. *See* State v.

Farmer, 841 S.W.2d 837, 839 (Tenn. Crim. App. 1992) (holding court should assess the similarity between the prior conviction and the crime on trial in determining probative value versus prejudice). Finally, the trial court found their probative value outweighed any unfair prejudice. The trial court's determination under Rule 609 will not be reversed absent an abuse of discretion. State v. Blanton, 926 S.W.2d 953, 960 (Tenn. Crim. App. 1996). We conclude the trial court did not err in allowing these convictions into evidence for impeachment purposes.

## IV. FINAL ARGUMENT

Defendant contends the prosecuting attorney mischaracterized the evidence in his final argument when he stated the following:

> I submit to you all of the proof shows that the victim was hit in a hopeless [sic] state. That's the important thing. The victim was hit in a helpless state.
>
> It indicates - - The evidence indicates that he was hit either when his wrists were bound or when he was unconscious, or at least injured to the degree that he could not raise his hands up to get any blood on his wrists.

The state contends this was a fair comment based upon the evidence. We agree with the state.

Generally, the scope of closing argument is subject to the trial court's discretion. State v. Middlebrooks, 995 S.W.2d 550, 557 (Tenn. 1999). However, the parties should be granted wide latitude provided the argument is "temperate, predicated on evidence introduced during the trial, relevant to the issues being tried, and not otherwise improper under the facts or law." State v. Thornton, 10 S.W.3d 229, 235 (Tenn. Crim. App. 1999).

The prosecutor's statement was a fair characterization of the testimony of Dr. Cynthia Gardner. Dr. Gardner was of the opinion that most of the blows to the victim's head were struck after his wrists were bound with duct tape. Dr. Gardner based her opinion upon the absence of blood beneath the tape and the presence of blood on the tape. Defendant contends that Dr. Gardner's statement on cross-examination that "one plausible theory is that this blood that got on the duct tape actually did not come from a blow" negates her previous testimony. We do not interpret her testimony in such a fashion. Accordingly, the final argument by the prosecutor was appropriate.

## V. JURY DELIBERATIONS

Defendant contends the trial court erred in not granting a mistrial when extraneous prejudicial information found its way into the jury's deliberations. We find no reversible error.

Dr. Nat T. Winston examined the defendant prior to trial in an effort to determine competency to stand trial and defendant's mental condition at the time of the offense. Dr. Winston concluded that the defendant was competent and insanity could not be supported. His three-page report was made an exhibit in a pre-trial hearing. This report was inadvertently sent into the jury room with other exhibits. Defendant contends Dr. Winston's opinion in the report that the defendant was "malingering" was prejudicial to the issue of self-defense.

When the presence of this report in the jury room was made known to the trial court, it voir dired the jury as to those who had seen the report. Only two jurors indicated they had seen the report. The court and counsel then questioned these two jurors out of the presence of the other jurors. One juror indicated he had read the report; he could totally disregard the report; and it would have no effect upon his deliberations. The other juror indicated he had "just looked at the cover basically" and did not go through it in any detail. The juror indicated he would not consider the report in any way during his deliberations. Both jurors assured the court they had not discussed the report with any other jurors. The trial court denied defendant's request for a mistrial.

If a juror has been exposed to extraneous prejudicial information, a rebuttable presumption of prejudice arises with the burden shifting to the prosecution to demonstrate its harmlessness. State v. Parchman, 973 S.W.2d 607, 612 (Tenn. Crim. App. 1997). We conclude the report was extraneous information sufficient to shift the burden to the state to demonstrate its harmlessness. *See* State v. Blackwell, 664 S.W.2d 686, 688-89 (Tenn. 1984). We must now determine whether the state has carried its burden in showing the harmlessness of this information.

We first note the trial court admonished both jurors that the report should not be considered, and both jurors unequivocally indicated it would not affect their deliberations. As previously stated, the jury is presumed to follow the trial court's instructions. *See* Nesbit, 978 S.W.2d at 885. We further note that the jury acquitted the defendant of premeditated first degree murder and convicted him of second degree murder. The report obviously did not prejudice the defendant in this regard. We further conclude that, in light of all the facts and circumstances in this case, the defendant was not prejudiced as to self-defense, especially in light of the trial court's prompt curative instructions. This issue lacks merit.

## VI. SENTENCING

Defendant contends his sentence of 23 years was excessive. Again, we disagree.

## A. Standard of Review

This court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999). If the trial

court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

Second degree murder is a Class A felony which carries from 15 to 25 years as a Range I offender. *See* Tenn. Code Ann. § 40-35-112(a)(1). The presumptive sentence for a Class A felony is 20 years, which is the mid-point of the range. Tenn. Code Ann. § 40-35-210(c). No particular weight for enhancement or mitigating factors is prescribed by the statute, as the weight given to each factor is left to the discretion of the trial court as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record. State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986); State v. Kelley, 34 S.W.3d 471, 479 (Tenn. Crim. App. 2000); Tenn. Code Ann. § 40-35-210 Sentencing Commission Comments.

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after giving due consideration and proper weight to the factors and principles set out under our sentencing law, and the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000).

In this case, the record reveals the trial court meticulously considered the enhancement and mitigating factors, the sentencing principles, and all relevant facts and circumstances. Accordingly, we accord the trial court's sentence a presumption of correctness.

## B. Analysis

The trial court found the defendant had a previous history of criminal convictions consisting of three misdemeanors. *See* Tenn. Code Ann. § 40-35-114(1). The trial court did "not [give this enhancement factor] a lot of weight." The trial court properly considered this enhancement factor.

The trial court further found the victim was treated with exceptional cruelty. *See* Tenn. Code Ann. § 40-35-114(5). Treatment of a victim with exceptional cruelty is not an element of the offense of second degree murder and may, under proper circumstances, be considered as an enhancement factor. *See* State v. Gray, 960 S.W.2d 598, 611 (Tenn. Crim. App. 1997). However, proper application of this factor requires a finding of cruelty "over and above" what is required for the offense itself. State v. Arnett, 49 S.W.3d 250, 258 (Tenn. 2001). This enhancement factor applies in cases dealing with abuse or torture. *See* State v. Alvarado, 961 S.W.2d 136, 151 (Tenn. Crim. App. 1996). When applying this enhancement factor, the trial court should state the actions of the defendant, apart from the elements of the offense, which constitute exceptional cruelty. State v. Goodwin, 909 S.W.2d 35, 45-46 (Tenn. Crim. App. 1995). Here, the defendant beat the unarmed victim with a two-by-four striking him a minimum of six times in the head with sufficient force to create several skull fractures. There was also evidence to indicate that some of the blows were struck after the victim's hands were bound. The defendant barricaded the victim in a closet and deprived him of the opportunity to seek medical assistance, if indeed he were alive. Under these circumstances, we will not disturb the trial court's application of this enhancement factor.

The trial court concluded the defendant utilized a deadly weapon in committing this offense. *See* Tenn. Code Ann. § 40-35-114(9). The use of a deadly weapon is not an element of the offense of second degree murder and may properly be considered an enhancement factor. *See* State v. Baxter, 938 S.W.2d 697, 705-06 (Tenn. Crim. App. 1996); State v. Butler, 900 S.W.2d 305, 313 (Tenn. Crim. App. 1994). A deadly weapon includes anything that in the manner of its use is capable of causing death or serious bodily injury. *See* Tenn. Code Ann. § 39-11-106(a)(5)(B). The two-by-four clearly qualified as a deadly weapon. The trial court properly applied this enhancement factor.

Defendant complains the trial court erroneously refused to consider certain mitigating factors. He contends the trial court erred in refusing to find that the defendant acted under strong provocation and that substantial grounds existed tending to justify his conduct, though failing to establish a defense. *See* Tenn. Code Ann. § 40-35-113(2), (3). The trial court's refusal to apply these mitigating factors is supported by the evidence. Defendant also complains the trial court refused to acknowledge his lack of prior violent criminal behavior. *See* Tenn. Code Ann. § 40-35-113(13). The trial court properly rejected this miscellaneous factor based upon the defendant's prior conviction for assault and battery.

The defendant further complains that the trial court erred by giving insignificant weight to the defendant's mental condition, his motivation to protect his son, his remorse, and his record as a good worker and provider. *See* Tenn. Code Ann. § 40-35-113(8), (13). However, the trial court did consider and give some weight to each of these mitigating factors.

It appears defendant's primary argument is that the trial court gave improper weight to enhancement and mitigating factors. However, the weight given to each enhancement or mitigating factor is left to the discretion of the trial court so long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record. Moss, 727 S.W.2d at 238. Here, the trial court made exemplary and detailed findings; it fully complied with the sentencing act; and its findings are supported by the record. The trial court did not err in sentencing the defendant to a term of twenty-three years, which is three years above the presumptive sentence and two years below the maximum sentence.

## CONCLUSION

Based upon the above analysis, we affirm the judgment of the trial court.

_____
JOE G. RILEY, JUDGE

-9-