# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs December 7, 2004

## STATE OF TENNESSEE v. DAVID A. LANGLEY

**Direct Appeal from the Circuit Court for Houston County**
**No. 4509    Allen W. Wallace, Judge**

---

**No. M2004-00631-CCA-R3-CD - Filed March 31, 2005**

---

In a three count indictment returned by the Houston County Grand Jury, Defendant, David A. Langley, was charged with rape of a child in the first two counts and with aggravated assault in count three. Following a jury trial, Defendant was convicted of rape of a child, a Class A felony, in count one; of the lesser included offense of aggravated sexual battery, a Class B felony, in count two; and of reckless endangerment with a deadly weapon, a Class E felony, in count three. Defendant was sentenced as a Range I standard offender to twenty-three years for the rape of a child conviction, ten years for the aggravated sexual battery conviction, and two years for the reckless endangerment conviction. The trial court ordered Defendant's sentence for aggravated sexual battery to be served consecutively to his sentence for rape of a child, and his sentence for reckless endangerment to be served concurrently with his sentence for aggravated sexual battery, for an effective sentence of thirty-three years. On appeal, Defendant argues (1) that the evidence is insufficient to support his convictions; (2) that the trial court's demeanor denied Defendant his due process right to a fair trial; (3) that the trial court erred in not suppressing Defendant's statements which he made on the night he was arrested; (4) that the trial court erred in not granting a mistrial when the State's witnesses made references to Defendant's previous incarceration and offenses; (5) that the State failed to make a proper election of offenses; (6) that the trial court erred in not permitting Defendant to call a certain witness and in limiting Defendant's cross-examination of Officer Chad Smith; (7) that the trial court erred in not allowing Defendant to introduce evidence pursuant to Rule 412 of the Tennessee Rules of Evidence; and (8) that the trial court erred in deferring its ruling of Defendant's motion to suppress the pornographic photographs found on his computer after his arrest. Defendant does not appeal the length or manner of service of his sentences. Following a thorough review of the record, we dismiss Defendant's conviction of felony reckless endangerment and remand for a retrial on count three of Defendant's indictment in accordance with this opinion. We otherwise affirm Defendant's judgments of conviction for rape of a child and aggravated sexual battery.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court Affirmed in Part;**
**Dismissed and Remanded for New Trial in Part**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

William B. Lockert, III, District Public Defender; and Haylee Bradley, Assistant District Public Defender, Ashland City, Tennessee, for the appellant, David A. Langley.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; William Michael McCown, District Attorney General; and Carey Thompson, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

Edna Langley, Defendant's mother, said that Defendant began living with her in the fall of 1999. In August 2001, Ms. Langley received a telephone call from her daughter, Audrey Miller, who told Ms. Langley that Defendant had inappropriately touched his nieces, CL and SL. (We will refer to the minor victims by their initials). At the time of the incident, CL was ten years old and SL was eight years old. Defendant listened in on Ms. Langley's telephone conversation from another telephone and became very upset and belligerent. Ms. Miller's daughter, Paula, called the police.

Defendant told Ms. Langley that he was not going to prison and threatened to commit suicide. Defendant took a handful of ibuprofen and began cutting his arm with a box cutter. He warned Ms. Langley not to call anyone, and Defendant's behavior frightened her. Ms. Langley said that Defendant told her that he had only touched CL once. Defendant said that CL was afraid, and he told her that they "would just be friends."

Ms. Langley said that CL and SL visited her often during the summer of 2000 and would stay several days at a time. SL never visited her alone. Ms. Langley said that there was a computer in the dining room that both she and Defendant used.

On cross-examination, Ms. Langley said that Defendant had attempted suicide before. Ms. Langley said that her granddaughters slept in her bedroom when they visited, and Ms. Langley went to bed at the same time as the girls. Ms. Langley said that she did not believe that she had ever left the girls alone without her supervision. She denied that she had seen any inappropriate behavior by Defendant, and said that Defendant and CL seemed to be good friends. Ms. Langley said that a detached garage was located about fifteen or twenty feet behind the house, but she had never seen either of the girls take a bottle of lotion into the garage. On redirect, Ms. Langley admitted that Defendant was alone with the girls at times, and Defendant took the girls to the park by himself.

Chad Smith, a police officer with the Erin Police Department, responded to the dispatcher's call about a domestic disturbance at Ms. Langley's house. Ms. Langley told Officer Smith that Defendant had taken some pills, and was upset and belligerent. Officer Smith found Defendant in the kitchen, holding his arm over the sink. Defendant was cutting his arm with a box cutter. Officer Smith told Defendant to put the box cutter down several times before Defendant looked up. Defendant told Officer Smith that he would make Officer Smith shoot him if he came any closer.

Defendant finally laid the box cutter down. Officer Smith said that Defendant had severed an artery in his arm, and "there was blood going everywhere."

Ms. Langley told Officer Smith after Defendant was taken to the hospital by ambulance, that her granddaughters had told one of their cousins that Defendant had molested them. Officer Smith interviewed CL that night, and she gave a statement implicating Defendant. CL's mother later learned that her second daughter, SL, had also been inappropriately touched by Defendant, and SL provided a similar statement to Officer Smith the following day.

Officer Smith said that he did not ask the Department of Children's Services for assistance with the investigation of the case. Officer Smith believed that the Department's involvement was not necessary because the perpetrator had been identified, the victims were not in any danger of harm from the perpetrator, and the victims had not expressed any reluctance in talking about the incidents. Officer Smith said that the Department did not usually participate in a perpetrator's interview. He later called Child Protective Services, a division of the Department of Children's Services, to arrange psychological counseling and a medical examination for the two victims. Officer Smith said that the person he spoke with told him that Child Protective Services did not offer that type of assistance, and that it was the mother's financial responsibility to secure medical and psychological assistance.

Officer Smith admitted that he was aware about the services provided to victims of child sexual abuse by Our Kids, Inc. Officer Smith said that he did not believe that the victims were ever medically examined. Officer Smith said, however, that he did not feel an examination was necessary based on the type of abuse alleged and the length of time since the incidents occurred.

Susan Langley, the victims' mother, said that her daughters visited Ms. Edna Langley often during the summer of 2000. The visits lasted from a few hours to two or three weeks. Susan Langley said that it was unusual for both girls to visit at the same time. Some time in the fall, CL seemed reluctant to visit her grandmother, but she did not give her mother a reason. Susan Langley said she never noticed whether or not either of the girls appeared uncomfortable around Defendant.

Susan Langley said that the girls spent time with their grandmother the following summer, but did not visit as often as they had in 2000. Susan Langley did not remember what Officer Smith told her about services available to child sexual abuse victims. She said that she tried to find counseling services through her insurance company but was not successful. Susan Langley believed her daughters would benefit from counseling. She had noticed SL masturbating some time after the incidents occurred but did not know why at the time. Susan Langley said that if SL saw an advertisement for sexual abuse counseling on television, she would write down the toll free number and give it to her mother. When Susan Langley asked SL why she wanted her to call the telephone number, SL replied, "because of that stuff with [Defendant]."

Audrey Miller said that Ms. Edna Langley became "very scared and upset" during their telephone conversation on August 31, 2001.

CL said that she was close to Defendant although she did not really know him before the summer of 2000. CL said that she got out of school in May, and that the first incident occurred one or two weeks later. CL said that Defendant put his fingers in her vagina, and that this hurt her. CL could not remember how many times Defendant touched her, but the touchings occurred in the garage and while she was sitting at the computer in the dining room. Defendant told CL that he would kill her if she told anyone about the touchings. CL said that her grandmother was in the living room when Defendant touched her in the dining room where the computer was located. CL said she told her mother about the incidents because she was tired of keeping a secret.

SL said that she visited her grandmother with CL one or two weeks after school was dismissed for the summer. She said that she sometimes visited Ms. Langley alone. SL said that while she was at her grandmother's house, Defendant showed her photographs on the computer about "sexual abuses and things about [that] kind of situation." SL said that Defendant put his finger in her vagina and patted her buttocks. The first incident occurred in Defendant's bedroom during the first week after school was dismissed for the summer. SL said that Defendant said that he would kill her if she told anyone that he touched her.

On cross-examination, SL said that Defendant made her touch his penis, and that he used lotion during the incidents.

Bonnie Mallory Biggs, a court liaison between the Department of Children's Services and Humphreys and Houston counties, testified for the defense. She said that she would have referred Ms. Langley and her daughters to Child Protective Services for a medical examination if Officer Smith had requested her to do so. She explained that part of the Department of Children's Services's duties was to assist in the investigation of child sexual abuse allegations. On cross-examination, however, Ms. Biggs said that the police do not refer all cases to the Department. The Department's primary focus is on the child's safety, and the level of its involvement in a particular case depends on that case's circumstances.

At the conclusion of the proof, the State elected to rely upon each victim's first sexual contact with Defendant to establish the charged offenses of rape of a child. These incidents for both victims occurred within two weeks of the close of the 2000 school year in their grandmother's home. CL said that Defendant digitally penetrated her during the first encounter, and SL said that Defendant digitally penetrated her and patted her buttocks during her first encounter with Defendant. Based upon the evidence presented for the elected offenses, the jury found Defendant guilty of rape of CL in count one. The jury found Defendant not guilty of the charged offense in count two, and guilty of the lesser included offense of aggravated sexual battery of SL. The jury found Defendant guilty of reckless endangerment with a deadly weapon as a lesser included offense of aggravated assault in count three per the trial court's jury instructions.

## II. Sufficiency of the Evidence

### A. Rape of a Child and Aggravated Sexual Battery Convictions

Defendant first challenges the sufficiency of the evidence supporting his convictions. Defendant argues that there was no medical proof that either victim had been digitally penetrated. He also contends that the sexual contacts could not have occurred in the manner described by the victims in their testimony because Ms. Langley was always present in the house and never saw any inappropriate behavior.

When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S.307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id.; State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Defendant was convicted in count one of rape of a child which required the State to prove that Defendant unlawfully sexually penetrated CL, and CL was under the age of thirteen. Tenn. Code Ann. § 39-13-522(a). "Unlawful sexual penetration" includes "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's . . . body." *Id*. § 39-13-501(7). Defendant was convicted in count two of the lesser included offense of aggravated sexual battery of SL. As relevant here, "aggravated sexual battery" is defined as unlawful sexual contact with a victim who is less than thirteen years old. *Id*. § 39-13-504(a)(4). Sexual contact involves the intentional touching of the victim's intimate parts or the clothing covering the victim's intimate parts "if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." *Id*. § 39-13-501(6). The victim's intimate parts include "the primary genital area, groin, inner thigh, buttock or breast. . . ." *Id.* -501(2).

The State elected to rely on the evidence of CL's first incidence of sexual contact with Defendant involving digital penetration for count one, and SL's first incidence of sexual contact with Defendant involving digital penetration and inappropriate touching of her buttocks for count two. As Defendant points out, the State did not present any medical evidence that either victim had been digitally penetrated. Instead, the State relied on the testimony of the victims, and Defendant's admissions to his mother following her telephone conversation with Ms. Miller.

The lack of medical evidence does not, by itself, render the evidence insufficient to support Defendant's convictions, but speaks more to the weight of the evidence for the jury. *State v. Howard*, 617 S.W.2d 656, 658 (Tenn. Crim. App. 1981). CL testified that she was born on February 14, 1991. She said that the school term ended in May, 2000, and that she visited her grandmother in June and July of that year. CL testified to numerous incidences during which Defendant digitally penetrated her during that period of time. Although CL could not remember where in her grandmother's house the first incidence of digital penetration occurred, CL said that the initial sexual contact with Defendant happened during the first two weeks of summer vacation. Ms. Langley testified that Defendant admitted to her that he "had molested [CL], but only one time."

SL said that she was born on September 9, 1992. SL testified to numerous incidences of sexual contact with Defendant, which included digital penetration, Defendant touching her buttocks, and Defendant making SL touch his penis. SL said that the initial sexual contact with Defendant occurred during the first week of her visit with Ms. Langley after the 2000 school term was over. SL said that Defendant digitally penetrated her and touched her buttocks in his bedroom. The jury could reasonably find that Defendant's sexual contacts with SL were for his sexual gratification or pleasure based on SL's testimony that Defendant showed her pornographic pictures on the computer before he touched her, and that Defendant told her about "things [she was] too little to know."

The inconsistencies within SL's testimony as to when she told her mother about the sexual contacts, and whether she visited her grandmother alone that summer or with her sister, were placed before the jury which clearly resolved the conflicts in the State's favor. It was also within the jury's purview to assess whether it was possible for the abuse to occur while Ms. Langley was in the house. Although Ms. Langley was at first adamant that she did not leave her granddaughters unsupervised, she eventually conceded that there were times when Defendant was alone with the victims. CL, for example, testified that her grandmother was in the living room when Defendant touched her as she sat in front of the computer in the dining room. Questions concerning the credibility of the witnesses are left to the jury, not this Court. *Bland*, 958 S.W.2d at 659. In viewing the evidence in the light most favorable to the state, the evidence is sufficient to support Defendant's conviction of rape of a child in count one and his conviction of aggravated sexual battery in count two.

### B. Reckless Endangerment with a Deadly Weapon Conviction

Defendant was indicted in count three of aggravated assault by "unlawfully, feloniously, intentionally, and knowingly caus[ing] Edna Langley to reasonably fear imminent bodily injury when the said [Defendant] made an assault upon her with a deadly weapon, to wit: a utility knife." *See* Tenn. Code Ann. § 39-13-102(a)(1)(B). At the conclusion of the evidence at trial, the jury received instructions on felony reckless endangerment and simple assault as lesser included offenses of aggravated assault. The jury rejected the charged offense of aggravated assault and found Defendant guilty of felony reckless endangerment.

Our Supreme Court, however, has concluded that felony reckless endangerment is not a lesser included offense of aggravated assault if the aggravated assault offense is committed by intentionally

or knowingly causing another reasonably to fear imminent bodily injury involving use or display of a deadly weapon because the statutory elements of the offenses do not satisfy the test set forth in *State v. Burns*, 6 S.W.3d 453 (Tenn. 1999). *State v. Moore*, 77 S.W.3d 132, 136 (Tenn. 2002). The Court found that:

> the risk of danger element required for felony reckless endangerment is not an element necessary to establish aggravated assault committed by intentionally or knowingly causing another to reasonably fear imminent bodily injury by use or display of a deadly weapon. Because all of the elements of felony reckless endangerment cannot be incorporated into the elements of aggravated assault committed by intentionally or knowingly causing another to reasonably fear imminent bodily injury by use or display of a deadly weapon, part (a) of the *Burns* test is not satisfied.

*Id.* at 135.

Next, the Court concluded that the disparate element, risk of danger, does not qualify as an exception afforded by part (b)(1) of the *Burns* test because the disparate element pertains to the presence of danger rather than the relevant mental state. As a result, part (b)(1) of the *Burns* test is not satisfied. *Id.* As for part (b)(2), the Court determined

> that the presence of danger is not an essential element of aggravated assault committed by placing another person in fear of imminent danger of death or serious bodily injury. Consequently, one can commit the offense of aggravated assault by placing another person in fear of danger even if there is no risk of danger. The same does not hold true for felony reckless endangerment. It logically follows that the danger produced during the commission of felony reckless endangerment produces a more serious harm or risk of harm than the fear of a non-existent danger that may be produced during the commission of aggravated assault. Therefore, part (b)(2) of the *Burns* test is not satisfied.

*Id.* at 135-136.

Finally, the Court concluded that part (c) of the *Burns* test was not met because the elements of the offense of felony reckless endangerment do not constitute the offenses of facilitation of aggravated assault, attempted aggravated assault, or solicitation of attempted aggravated assault. *Id.* at 136.

Thus, the trial court erred in providing an instruction to the jury on felony reckless endangerment. "Article I, § 9 of the Tennessee Constitution provides that, in a criminal prosecution, the accused has the right to receive advanced notice of the charges that he or she must defend. . . . Consequently, the accused may be convicted only of an offense enumerated in the indictment, or an offense that qualifies as a lesser included offense thereof."

*Id.* at 134 (citation omitted) (citing *Hagner v. U.S.*, 285 U.S. 427, 431, 52 S. Ct. 417, 76 L. Ed. 2d 861 (1932)); *State v. Rush*, 50 S.W.3d 424, 427-28 (Tenn. 2001)).

Because Defendant was convicted of an offense that is neither included in the indictment nor a lesser included offense of the charged offense, we dismiss and set aside Defendant's conviction of felony reckless endangerment and remand for a new trial on count three of the indictment. On remand, Defendant should be tried on any offense which qualifies as a lesser included offense of aggravated assault under *Burns*, but not for the charged offense of aggravated assault, for which he has been acquitted following the jury finding him guilty of felony reckless endangerment. *See Rush*, 50 S.W.2d at 432 (citing *State v. Maupin*, 859 S.W.2d 313 (Tenn. 1993)).

At the present time, case law provides that the lesser included offenses of aggravated assault "committed by intentionally and knowingly causing another to reasonably fear imminent bodily injuring involving use or display of a deadly weapon" are as follows: (a) reckless aggravated assault, a Class D felony, *State v. Michael P. Healy*, No. W19990-01510-CCA-R3-CD (Tenn. Crim. App., at Jackson, June 26, 2001); *State v. Brandon Patrick*, No. 03C01-9905-CC-00201 (Tenn. Crim. App., at Knoxville, Jan. 26, 2000); and (b) simple assault by causing reasonable fear of bodily injury, a Class A misdemeanor, *State v. Brandon Patrick*, No. 03C01-9905-CC-00201 (Tenn. Crim. App., at Knoxville, Jan. 26, 2000); *State v. Thomas Wayne Shields*, No. W2000-01524-CCA-R3-CD (Tenn. Crim. App., at Jackson, Jan. 4, 2002).

Because we have dismissed Defendant's conviction of felony reckless endangerment, we need not address his sufficiency of the evidence regarding that offense.

## III. Election of Offenses

Defendant argues that the State's election of offenses was not sufficiently adequate to ensure the unanimity of the jury's verdict. Both victims testified that a number of sexual contacts occurred during the summer of 2000. In general, "when the evidence indicates that the defendant has committed multiple offenses against a victim, the prosecution must elect the particular offense as charged in the indictment for which the conviction is sought." *State v. Brown*, 992 S.W.2d 389, 391 (Tenn. 1999). In such cases, there is a concern that some jurors will convict based on the existence of one offense, while other jurors will convict based on the existence of an entirely different offense. *See State v. Shelton*, 851 S.W.2d 134, 137 (Tenn. 1993). Recognizing the practical difficulties present in applying the election requirement in cases of child sexual abuse, our Supreme Court has further provided the following guidelines:

> By insisting upon election, we emphasize that the state is not required to identify the particular date of the chosen offense . . . . If, for example, the evidence indicates various types of abuse, the prosecution may identify a particular type of abuse and elect that offense. Moreover, when recalling an assault, a child may be able to describe unique surroundings or circumstances that help to identify an incident. The child may be able to identify an assault with reference to a meaningful event in his

or her life, such as the beginning of school, a birthday, or a relative's visit. Any description that will identify the prosecuted offense for the jury is sufficient. In fulfilling its obligation under *Burlison* to ensure that an election occurs, the trial court should bear in mind that the purpose of election is to ensure that each juror is considering the same occurrence. If the prosecution cannot identify an event for which to ask for a conviction, then the court cannot be assured of a unanimous decision.

*Shelton*, 851 S.W.2d at 137-38 (citations omitted).

The indictment charged Defendant with committing rape of a child against both victims between June 1, 2000, and August 1, 2000. Following the conclusion of the defense's proof, the State requested a jury instruction on the election of offenses, and the following brief discussion occurred:

| [STATE]: | Well, Judge, also the State had requested an instruction regarding the election of offenses the Court has included. |
| [THE COURT]: | Yes, we're going to give that. |
| [DEFENSE COUNSEL]: | We've agreed to that. |
| [STATE]: | And I think we'll probably need to announce that to the jury before argument begins. |

Accordingly, the trial court instructed the jury as follows:

Now the lawyers will give their presentation to you and then when they get through, I'll charge you. I want to tell you though, and I'll tell you again in the charge, that the defendant . . . has been charged in count one of rape of [CL] and in count two of rape of [SL]. Although you heard proof of several sexual offenses, the State has elected to proceed in the first incidence of digital penetration alleged by the victim [CL] and you will consider only that allegation during your deliberation. The same applies although you heard proof of several offenses that the state has elected to proceed in the first instance of digital penetration alleged by the victim [SL] and you will consider only that allegation in your deliberation.

Defendant argues that the State's failure to inform the jury of the exact location and date of the victims' first sexual contacts with Defendant left the jury without adequate guidance as to which offenses the State sought conviction.

The State initially argues that Defendant has waived this issue because he did not enter a contemporaneous objection to the trial court's jury instruction on election of offenses at the time of trial. *See* Tenn. R. App. P. 36(a). Tennessee Rule of Appellate Procedure 3 (e) provides "that in all cases tried by a jury, no issue presented for review shall be predicated upon error in . . . jury instructions granted or refused . . . or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived." Our Supreme Court recently stated that "Tennessee Rule of Criminal Procedure 30(b) . . . provides that the parties are to be given the opportunity to object to the content of the jury instruction or the failure to give a requested instruction; however, the failure to make objections in these instances does not prohibit them from being used as grounds in the motion for new trial." *State v. Robinson*, 146 S.W.3d 469, 509 (Tenn. 2004) (citing Tenn. R. Crim. P. 30(b); *State v. Lynn*, 924 S.W.2d 892, 898-99 (Tenn. 1996). In this case, Defendant challenged the content of the trial court's instruction to the jury on the election of offenses in his motion for new trial. We will, therefore, address his issue on the merits.

Both victims related the timing of their first sexual contact with Defendant to the end of the school year in May and their visit to Ms. Langley in June. Both victims were explicit as to the type of abuse that occurred. SL said her first sexual contact with Defendant occurred in his bedroom. CL could not remember exactly where the first sexual touching occurred but knew it was in Ms. Langley's home. Based on our review of the record, the State's articulation of its election of offense for counts one and two of the indictment was sufficient.

Although he cites no authority in support of his position, Defendant also appears to contend that the State must make a separate election of offenses with regard to each of the lesser included offenses charged to the jury. In other words, Defendant argues that the State failed to make the requisite election to support his aggravated sexual battery conviction in count two because the State's election only referred to the charged offense of rape of a child. Clearly, the State's election of a specific offense to support a conviction includes not only a conviction of the charged offense, but also a conviction of a lesser included offense arising out of the same incident.

Defendant also argues that the State was required to elect the offense it was relying upon to support Defendant's conviction of the lesser included offense of reckless endangerment. Defendant contends that the evidence could have supported a finding that he also recklessly endangered Officer Smith after Officer Smith arrived at Ms. Edna Langley's house. Therefore, Defendant surmises that some jurors could have convicted him of recklessly endangering Officer Smith, while others could have concluded that he recklessly endangered Ms. Edna Langley. Although our dismissal of Defendant's conviction of felony reckless endangerment renders this issue moot, we nonetheless find that the State was not required to make an election of offenses on count three of the indictment. Count three charged Defendant with committing one offense against Ms. Edna Langley, not Officer Smith. The State presented evidence of only one alleged offense against Ms. Langley, which occurred on the night Defendant attempted to commit suicide. An election of offenses is necessary only when there are multiple offenses committed against the same victim. *Brown*, 992 S.W.2d at 391.

## IV. Admissibility of Defendant's Admissions

Prior to trial, Defendant sought the suppression of the statements he made to Ms. Edna Langley on the night he attempted to commit suicide. The first statement included his admission that he had molested CL one time. The second statement referenced his refusal to go back to prison, and the third statement was his admission that he had been imprisoned once before for child sexual abuse. At the conclusion of this pre-trial suppression hearing, the trial court, Judge Robert Burch presiding, ruled the first two statements admissible under Rule 803(1.2) of the Tennessee Rules of Evidence. The trial court ruled that Defendant's statement concerning his prior conviction for child sexual abuse, although relevant, was inadmissible because any probative value of the statement was substantially outweighed by its potential prejudice.

Although he cites no authority in support of his position, Defendant contends that all three statements were inadmissible because he was "in such a highly emotional and suicidal state, that he [was] not . . . capable of making a voluntary statement."

At a second hearing on Defendant's amended motion to suppress before Judge Allen W. Wallace, Ms. Langley testified that Defendant became very upset and agitated after he overheard Ms. Langley's conversation with Ms. Miller. She said Defendant got a box cutter and told Ms. Langley he was going to kill himself. Defendant took a bottle of Ibuprofen and then began to cut his arm.

Officer Smith said that he responded to the dispatcher's call about a domestic disturbance at Ms. Langley's house. When he arrived, Defendant was sitting on a bar stool in front of the kitchen sink. Defendant was leaning over the sink and cutting his left arm with a knife. Officer Smith said Defendant had apparently severed an artery because blood was spurting out of one of the wounds. Officer Smith ordered Defendant to drop the knife, but Defendant ignored him. Officer Smith repeated his order. Defendant looked up at that point and said that he would make Officer Smith shoot him if he came any closer. Officer Smith said that Defendant was calm during this exchange. Officer Smith continued to urge Defendant to drop his knife. Eventually, Defendant complied, and the officers were able to begin medical assistance.

The trial court ruled that Defendant's statement that he would not go to prison and his admission that he had inappropriately touched CL one time were admissible. The trial court found that the prejudicial effect of Defendant's admission that he had already been in prison once for a similar charge outweighed its probative value, and thus ruled the statement inadmissible.

The findings of fact made by the trial court at a hearing on a motion to suppress are binding upon this court unless the evidence contained in the record preponderates against them. *State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001). The trial court, as the trier of fact, is best able to assess the credibility of witnesses, determine the weight and value to be afforded the evidence, and resolve any conflicts in the evidence. *Id.* (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). However, this Court is not bound by the trial court's conclusions of law. *State v. Simpson*, 968 S.W.2d 776, 779

(Tenn. 1998). The application of the law to the facts found by the trial court is a question of law that this Court reviews *de novo*. *State v. Daniels*, 12 S.W.3d 420, 423 (Tenn. 2000).

In his argument, Defendant appears to argue that the same level of constitutional protection that surrounds a defendant's confession during a custodial interrogation attaches to a voluntary statement made to a third party in a non-custodial situation. *See Miranda v. Arizona*, 384 U.S. 436, 475, 86 S. Ct. 1602, 1628, 16 L. Ed. 2d 694 (1966) (An accused's waiver of right against self-incrimination during a police interrogation must be made "voluntarily, knowingly, and intelligently.") There is no constitutional protection, however, from an accused's voluntary statements made under circumstances devoid of the presence of any governmental action. *State v. Land*, 34 S.W.3d 516, 524 (Tenn. Crim. App. 2000).

Defendant's statements were clearly admissible under the hearsay rule which permits the admission of an out-of-court statement offered against a party that is the party's own statement. Tenn. R. Evid. 803(1.2). *See State v. Binion*, 947 S.W.2d 867, 874 (Tenn. Crim. App.1996). Defendant's challenges to the voluntariness of his statements and his mental stability at the time address the circumstances under which the statements were made. Both Officer Smith and Ms. Edna Langley described Defendant's conduct before and after he made the statements in detail. It was the jury's responsibility to determine whether these statements were made, whether they were truthful, and what weight to give the statements. We find no error in the admission of Defendant's statements into evidence. Defendant is not entitled to relief on this issue.

## V. Demeanor of the Trial Court

Defendant argues that the trial court's expressions of "open disdain and impatience" during the course of the trial denied him his due process right to a fair trial. At the hearing on Defendant's motion for new trial, Haylee Bradley, one of Defendant's trial counsel, testified that the trial court appeared to be "disgruntled" or impatient when defense counsel either requested a hearing out of the presence of the jury or entered an objection during the course of the trial. Ms. Bradley said that other people in the courtroom noticed the trial court's expressions. Ms. Bradley said the trial court also interrupted defense counsel during closing argument and cautioned counsel that he was being repetitive. Ms. Bradley conceded that neither she nor Mr. Lockert brought any objectionable expressions to the trial court's attention during the trial. She said that she did not believe that the trial court's irritation or frustration was reflected in its rulings during the course of the trial, and neither she nor Mr. Lockert disputed the fairness of the trial court's rulings.

The trial court asked the prosecutor about his observations. The prosecutor said that he believed there were times during the trial when the judge appeared irritated with defense counsel, but he did not think the jury was present during these occasions. The trial court continued the hearing so that it could review the trial record in view of Defendant's issue.

At the second hearing on Defendant's motion for new trial, Rhonda Runyon, the office manager for the Public Defender's Office, said that she attended Defendant's trial and noticed what

appeared to be frustration on the part of the trial court. Ms. Runyon could not remember whether the jury was present when the trial court expressed frustration with defense counsel, but said that members of the Public Defender's Office had some concern about the impact of the trial court's demeanor on the jury. Ms. Runyon said that during one of the breaks, the court clerk asked her if the trial court was mad at Mr. Lockert, the public defender. Ms. Runyon told her that the trial court was "just somewhat frustrated." On cross-examination, Ms. Runyon agreed that the trial court was also frustrated at times with the prosecutor.

Based on its review of the trial transcript, the trial court conceded that some frustration on its part was apparent during a colloquy in a hearing out of the presence of the jury between the trial court and defense counsel. However, the trial court found that the record did not support defense counsel's argument that the trial court's demeanor adversely impacted the deliberations of the jury.

It is well settled that "all litigants are entitled to the 'cold neutrality of an impartial court' and have a right to have their cases heard by fair and impartial judges." *Wright v. Pate*, 117 S.W.3d 774, 778 (Tenn. Ct. App. 2002) (quoting *Kinnard v. Kinnard*, 986 S.W.2d 220, 227 (Tenn. Ct. App. 1998). Cannon 3(A) of the Code of Judicial Conduct observes that a trial judge should be "patient, dignified, and courteous to the litigants, jurors, witnesses and lawyers" during the course of a trial, and instructs the trial judge to perform its judicial duties without bias or prejudice. Tenn. Sup. Ct. R. 10. Although broad discretion is extended to the trial judge in controlling the course and conduct of the trial, the trial judge must refrain from expressing "any thought that might lead the jury to infer that the judge is in favor of or against the defendant in a criminal trial." *State v. Cazes*, 875 S.W.2d 253, 260 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 66 (Tenn. 1992).

After its review of the record, the trial court observed,

And probably if you read this record, . . . sometime during the colloquy between the Court and Mr. Lockert during jury out hearings, it's pretty obvious that sometimes I was a little bit frustrated because Mr. Lockert I felt like in this case, and pointed it out in the trial record . . . I felt like he was leaving the impression – trying to leave the impression to the jury that only the Department of [Children's] Services investigated rape cases. And I kept telling him throughout the trial that that's just not the truth. You don't have to go through [Children's] Services. And we went over it and over it."

The hearing referred to by the trial court occurred during presentation of Defendant's proof and concerned the admissibility of Ms. Biggs' and Ms. Miller's testimony about the Department of Children's Services' role in investigating allegations of child sexual abuse. Following a lengthy hearing, the trial court concluded that the majority of both witnesses' proposed testimony was irrelevant and immaterial. Any expressions of frustration during this hearing occurred after the jury had been removed from the courtroom, and the jury was thus not exposed to prejudice, even if the trial court's remarks had shown a bias against Defendant.

Defendant also contends that the trial court's interruption of defense counsel's closing argument unfairly prejudiced his case. During counsel's argument, the trial court made the following comments:

| | |
|---|---|
| [THE COURT]: | Mr. Lockert, you're getting awfully repetitive. |
| [DEFENSE COUNSEL]: | Yes, Your Honor, I only get one chance to argue. If you want me to stop, I'll stop. |
| [THE COURT]: | No, I'm just telling you you're getting awfully repetitive. |

Whereupon, defense counsel resumed his closing argument. During the State's summation, defense counsel objected as follows:

| | |
|---|---|
| [DEFENSE COUNSEL]: | Your Honor, this is repetition in this argument and the same argument before, just over and over. |
| [THE COURT]: | Overruled. What's fair for the goose is fair for the gander. |
| [DEFENSE COUNSEL]: | I agree. I just thought if he's going to object to it, and I was repetitious, he could be too. |

We cannot read the exchanges between defense counsel and the trial court as anything other than the trial court's fulfillment of its duty to ensure that the proceedings "move along in an orderly and systematical manner." *State v. Evans*, 838 S.W.2d 185, 195 (Tenn. 1992). Obviously, the impact of facial expressions and body language upon a jury is difficult to discern from a written record. *State v. Brown*, 836 S.W.2d 530, 552 (Tenn. 1992). Based upon our reading of the record as a whole, however, and taking the trial court's comments in context, we conclude that the trial court did not infringe on Defendant's due process right to a fair trial. Defendant is not entitled to relief on this issue.

## VI. Presentation of Defendant's Defense

Defendant argues that the trial court erroneously prevented him from presenting evidence that the State's investigation of the allegations made against Defendant was inadequate and not in accordance with the Department of Children's Services' procedures. Defendant contends that such evidence was relevant to show bias against Defendant during the investigation of the case.

Defendant proposed calling Melinda Miller, the victim/witness coordinator for the district attorney's office in Humphreys County, to describe how a typical interview was conducted during a child sexual abuse investigation based upon her experience in transcribing such interviews. The

State objected to her testimony on relevancy grounds. During a hearing out of the presence of the jury, Ms. Miller said that she would have referred the victims to a rape and sexual abuse center for a medical examination and counseling if either the victims or Officer Smith had asked her for her assistance. Ms. Miller said that it appeared from the transcripts she had typed that it was not unusual for both the investigating officer and the representative of the Department of Children's Services to ask questions during an interview of either the perpetrator or the victims. On cross-examination, Ms. Miller agreed that it was also not unusual for the Department of Children's Services not to be involved in an investigation, depending on the circumstances present in the case and the procedures of the county in which the incident occurred.

The trial court found that Ms. Miller, who was not an employee of the Department of Children's Services, could not competently testify as to the procedures and policies of the Department of Children's Services, and her testimony as to her observations gleaned from typing up interviews conducted in Houston and Humphreys county was not relevant to a material issue at trial.

Defendant also proposed calling Ms. Biggs to testify as to the Department of Children's Services' procedures. The trial court found that Ms. Biggs was competent to testify that the Department is able to help victims of child sexual abuse find medical and counseling services, and that the Department of Children's Services participates in interviews relating to a child sexual abuse investigation if the investigating officer requests assistance. The trial court found, however, that Ms. Biggs was not competent to offer her opinion as to what a medical examination of the victims in the present case might or might not have shown if one had been performed.

"A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Tenn. R. Evid. 602. A witness is thus not permitted to engage in mere speculation. *Land*, 34 S.W.3d at 522.

The record supports the trial court's finding that Ms. Miller was not competent to testify about the polices and procedures of the Department of Children's Services. Ms. Miller was not an employee of the Department, and she was not directly involved in the investigation of child sexual abuse cases. There was also no evidence that Ms. Biggs had any personal knowledge of the nature and types of medical examinations performed on victims of child sexual abuse, or that she had any direct involvement with medical issues other than offering referrals for medical assistance to victims and their families. Defendant is not entitled to relief on this issue.

Defendant also argues that the trial court erred in limiting his cross-examination of Officer Smith concerning the adequacy of his investigation and his failure to secure medical and psychological services for the victim. Relief on this issue, however, cannot be granted because Defendant does not provide any citations to the record. Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b).

Defendant argues that the cumulative effect of the trial court's evidentiary rulings denied him the opportunity to present a complete defense. Under the Due Process Clause of the Fourteenth

-15-

Amendment, criminal defendants must be afforded a meaningful opportunity to present a complete defense, which includes the right to present witnesses favorable to the defense. *State v. Brown,* 29 S.W.3d 427, 432 (Tenn. 2000) (citations omitted.). In *Brown*, our Supreme Court stated,

> The facts of each case must be considered carefully to determine whether the constitutional right to present a defense has been violated by the exclusion of evidence. Generally, the analysis should consider whether: (1) the excluded evidence is critical to the defense; (2) the evidence bears sufficient indicia of reliability; and (3) the interest supporting exclusion of the evidence is substantially important.

*Id*, at 433-434 (citing *Chambers v. Mississippi*, 410 U.S. 284, 298-301, 93 S. Ct. 1038, 1047-1049, 35 L. Ed. 2d 297 (1973)).

Based upon our review of the record, we find that the trial court's evidentiary findings did not deprive Defendant of his right to present a defense. Through his cross-examination of Officer Smith, defense counsel was able to present the jury with what he perceived were the inadequacies in Officer Smith's investigation, including his failure to involve the Department of Children's Services or to secure a medical examination or other types of counseling for the victims. Ms. Biggs provided information to the jury about the procedures normally followed by the Department of Children's Services and the investigating officers in a child sexual abuse case. The jury ultimately resolved any conflicts in favor of the State, as was its prerogative. Defendant is not entitled to relief on this issue.

## VII. Admissibility of Computer Photographs

Prior to trial, Defendant filed a motion to suppress the pornographic material found on his computer after his indictment in 2001. Defendant also filed a motion pursuant to Rule 412 of the Tennessee Rules of Evidence seeking to introduce evidence of the victims' prior sexual behavior to show the extent of their sexual knowledge. The trial court deferred ruling on both motions pending the development of the evidence at trial. Defendant argues that the trial court's refusal to rule on his pretrial motions was error. Defendant contends that the possibility that the pornographic material might be introduced into evidence effectively forced him to forego exercising his right to testify and from pursuing the introduction of Rule 412 evidence.

Rule 12(e) of the Tennessee Rules of Criminal Procedure requires the trial court to rule on all pretrial motions before trial unless the court defers ruling for a good cause. Some of the underlying purposes behind Rule 12(e) are to avoid inconveniencing jurors and witnesses, to apprize both parties of the evidence that will be admissible at trial which might affect trial strategy and to preserve the State's right to appeal an adverse ruling. *Feagins v. State*, 596 S.W.2d 108, 110 (Tenn. Crim. App. 1979).

Defendant filed a motion pursuant to Rule 412 seeking to introduce evidence that family members had seen one or both of the victims engaging in masturbation, in order to show the victims'

sexual knowledge. Rule 412 permits defendants charged with certain sexual offenses to introduce evidence of the victim's prior sexual behavior under certain circumstances and for limited purposes. Tenn. R. Evid. 412. The defendant must file a pre-trial motion accompanied by a written offer of proof, and the trial court is required to determine the admissibility of such evidence during a hearing conducted prior to trial. Tenn. R. Evid. 412(1).

At the hearing on Defendant's motion, defense counsel indicated that he had learned about the incidences of masturbation from the victims' mother, Susan Langley. The State agreed that Susan Langley might testify that she had seen SL masturbating. However, Susan Langley witnessed this conduct either during or after the summer the offenses were committed. Susan Langley subsequently testified at trial that she had seen SL masturbating, and SL told her she was doing so "because of that stuff with [Defendant]." Defendant did not cross-examine Ms. Langley about her observations.

At the outset, we note that generally, when a defendant does not object to the trial court's decision to defer ruling on his motion to present Rule 412 evidence, the issue is waived for purposes of appeal. *See State v. Cherry*, 639 S.W.2d 683, 687 (Tenn. Crim. App. 1982). In this instance, however, it appears that the evidence of masturbation which Defendant proposed introducing under Rule 412 was, in fact, placed before the jury, albeit during the State's case-in-chief. It appears from the record that Defendant misunderstood the timing of when Susan Langley noticed SL masturbating. Defendant clearly made a strategic decision not to pursue this line of questioning when Ms. Langley said that the masturbation event was noticed after the offenses occurred and was one of the signs to her that something was wrong. The record is devoid of any indication of what other type of evidence Defendant felt he was precluded from offering. Defendant is not entitled to relief on this issue.

The other evidence in question consisted of downloaded pornographic photographs which were discovered on Defendant's computer after his arrest a year or more after the offenses occurred. The State admitted at the hearing on Defendant's motion to suppress that the photographs would not be admissible during the presentation of its case-in-chief. The State observed, however, that the items might be admissible under certain circumstances as rebuttal evidence. The trial court deferred ruling on the motion to "see how the trial proceeds," and warned the State not to mention the pornographic materials unless a hearing on the admissibility of the evidence was held out of the jury's presence.

The primary purposes behind Rule 12(b)(3), requiring that a motion to suppress be filed prior to trial, relate to avoiding interruptions and inefficiencies in jury trials and to providing the State an opportunity to appeal an adverse ruling without putting the defendant twice in jeopardy. *State v. Cook*, 9 S.W.3d 98, 101 (Tenn. 1991) (citing *State v. Randolph*, 692 S.W.2d 37, 40 (Tenn. Crim. App. 1985)). In order to effectuate these purposes, a trial court must rule on a motion to suppress prior to trial unless the trial court provides good cause for deferring its ruling. Tenn. R. Evid. 12(e); *Bolton v. State*, 591 S.W.2d 446, 449 (Tenn. Crim. App. 1979). Based on our review of the record, however, we find that any deficiency in the trial court's articulation of good cause for deferring its

ruling on Defendant's motion to suppress the computer generated pornography is, at most, harmless error.

Rebuttal testimony "is that which tends to explain or controvert evidence produced by an adverse party." *Cozzolino v. State*, 584 S.W.2d 765, 768 (Tenn. 1979). By its nature, then, rebuttal evidence includes any competent evidence "which explains or is a direct reply to, or a contradiction of, material evidence" introduced by an adverse party. *Nease v. State*, 592 S.W.2d 327, 331 (Tenn. Crim. App. 1979). Rebuttal evidence, however, can only be introduced after the adverse party introduces the evidence to be rebutted, because "[o]ne cannot rebut a proposition that has not been advanced." *Cozzolino*, 584 at 768. The admission or rejection of rebuttal evidence is a matter within the discretion of the trial court. *State v. Scott*, 735 S.W.2d 825, 828 (Tenn. Crim. App. 1987).

In this instance, Defendant had already indicated to the trial court at the hearing on his motion to suppress that he did not intend to object to the victims' testimony that Defendant had shown them pornographic photographs on his computer in 2000. Based on Defendant's own assertions, one can reasonably conclude that the presence or absence of pornographic material on Defendant's computer was not going to be an issue at trial. It is difficult to see, therefore, how the trial court's failure to rule in advance on the admissibility of the photographs found in 2001 chilled Defendant's right to testify, even if such ruling had been possible. The 2001 pornographic material was never shown to the jury. Other than Defendant's bare assertion that the trial court's failure to rule in advance on the admissibility of this evidence affected his trial strategy, Defendant has not shown how he was prejudiced by the delayed ruling. Defendant is not entitled to relief on this issue.

## VIII. Mistrial

Defendant next challenges the trial court's denial of his motion for a mistrial as a result of inferences during the testimony of the State's witnesses that he had been in prison before and that he had committed similar offenses.

During Ms. Edna Langley's testimony, the State pursued the following line of questioning:

[STATE]: Now you said that as he overheard – or right after he overheard this conversation that he said – did he say he wasn't going back – going to prison?

[MS. EDNA LANGLEY]: That's what I wrote on that paper. Now I knew he had been in jail, but I –

[STATE]: That's not what I asked you Ms. Langley. Did he admit that he had done anything to either one of your granddaughters.

The second reference to Defendant's past conduct occurred during Audrey Miller's testimony on redirect examination. The following exchange took place.

| | |
|---|---|
| [STATE]: | You said you drove to Erin from Clarksville? |
| [MS. MILLER]: | Yes, sir. . . . |
| [STATE]: | Why did you do that? |
| [MS. MILLER]: | Because I was afraid, very afraid. |
| [STATE]: | So something had happened to make you scared enough to get in the car and drive over here? |
| [MS. MILLER]: | Yes, sir. |
| [STATE]: | Can you tell us exactly what that was? |
| [DEFENSE COUNSEL]: | Your honor, I'm not sure what he's going into. I'll ask for an out of jury [hearing] at this time out of an abundance of caution. |
| [MS. MILLER]: | My mother was afraid.  I don't know what I'm allowed to say.  This wasn't the first time that we've – |
| [DEFENSE COUNSEL]: |  Again, Your Honor, I'm going to ask for – |
| [THE COURT]: | Sustained. |

Defendant requested a hearing out of the jury's presence and moved for a mistrial. Defendant conceded that he did not object to Ms. Edna Langley's reference to his prior incarceration because he did not want to draw the jury's attention to her comment. He argued, however, that Ms. Edna Langley's comment coupled with Ms. Miller's reference to prior occurrences could only be interpreted by the jury as a reference to prior sexual offenses.

The trial court denied Defendant's motion for a mistrial, observing that neither witness said that Defendant had committed a prior criminal offense. The trial court concluded that Ms. Miller's remark could have been interpreted as a reference to Defendant's past suicide attempts, which Defendant brought up on Ms. Edna Langley's cross-examination. Defendant requested a curative instruction that Ms. Miller's comment was not in reference "to any prior crime or anything of that nature." The trial court instructed the jury as follows:

Members of the jury, any inferences that have been made or any statements or inferences about any prior conduct of any kind, you can't consider that. This man has got to be tried strictly alone upon whether he committed this offense or not. So anything that might have been said just put it out of your mind. Just don't consider it.

Defendant does not cite any authority to support his assertion that the trial court's denial of his motion for a mistrial was error. "Issues which are not supported by argument, citation to authorities or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b); *see also* Tenn. R. App. P. 27(a)(7). For this reason, this issue has been waived. Nonetheless, we will consider the merits of Defendant's issue.

The decision of whether or not to grant a mistrial rests within the sound discretion of the trial court and should not be disturbed on appeal absent a clear showing of abuse. *State v. Robinson*, 146 S.W.3d 469, 494 (Tenn. 2004). "A mistrial should be declared only upon a showing of manifest necessity" such that "'a miscarriage of justice would result" if the trial were to continue. *Id.* (citing *State v. Saylor*, 117 S.W.3d 239, 250-51 (Tenn. 2003); *State v. Land*, 34 S.W.3d 516, 527 (Tenn. Crim. App. 2000)). The burden of showing the necessity of a mistrial is upon the party seeking the mistrial. *Land*, 34 S.W.3d at 527 (citing *State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996)).

When determining whether a mistrial is necessary after a witness makes an improper remark, this Court has previously considered: "(1) whether the improper testimony resulted from questioning by the State, rather than having been a gratuitous declaration; (2) the relative strength or weakness of the State's proof; and (3) whether the trial court promptly gave a curative instruction." *State v. Bernie Nelson Thomas, Jr.*, No. W2004-00498-CCA-R3-CD, 2004 WL 2439405, *5 (Tenn. Crim. App., at Jackson, Nov. 1, 2004) (citing *State v. Paul Hays*, No. W2001-02637-CCA-R3-CD, 2002 WL 31746693 (Tenn. Crim. App., at Jackson, Dec. 6, 2002), *perm. to appeal denied* Tenn. May 27, 2003).

The first offending statement occurred during the State's direct examination of Edna Langley. It appears that the prosecutor inadvertently inserted the word "back" into its inquiry as to whether Defendant told Edna Langley that he was not going to prison. The remark was fleeting, however, and the State quickly moved on to another line of questioning. Nothing in the exchange between the State and Edna Langley indicates that Defendant had previously been in prison because of the commission of a similar offense. Under these circumstances, we cannot conclude that the remark rose to the level of prejudice resulting in "manifest necessity" for a mistrial.

The second challenged remark was an unsolicited, spontaneous remark by Ms. Miller after Defendant had objected to the State's line of questioning. The subject matter of Ms. Miller's testimony did not address the victim's allegations of sexual abuse, but focused instead on the nature of Defendant's conduct after Ms. Miller called Edna Langley, and Edna Langley's response to Defendant's actions. On cross-examination, Defendant asked Ms. Miller if it would surprise her to

know that Defendant repeatedly cut his arm that night. Ms. Miller responded that it would not surprise her. Later, on redirect examination, Ms. Miller said she drove to Ms. Langley's house that night because her mother was afraid. At this point, Ms. Miller interjected the impression that the family had dealt with this type of incident before. Viewing Ms. Miller's response in the context of her testimony, the record supports the trial court's finding that Ms. Miller was referencing Defendant's previous attempts at suicide, not a prior offense. Defendant brought his past suicide attempts to the jury's attention during Edna Langley's cross-examination. The trial court immediately issued a curative instruction which the jury is presumed to have followed. *Reid*, 91 S.W.3d at 279; *see also State v. Adkins,* 786 S.W.2d 642, 644 (Tenn. 1990) (A mistrial is not required following a witness's outburst where the trial court took immediate action to dispel the prejudice). Under these circumstances, the trial court did not abuse its discretion by denying Defendant's request for a mistrial. Defendant is not entitled to relief on this issue.

## CONCLUSION

After a thorough review of the record, we dismiss Defendant's conviction of felony reckless endangerment and remand for a new trial on count three of the indictment on the lesser included offenses of aggravated assault as set forth in this opinion and where required to be charged per *Burns* and its progeny, based upon the proof in the record. We affirm Defendant's judgments of conviction for rape of a child and aggravated sexual battery.

_____
THOMAS T. WOODALL, JUDGE